2001 ME 36

**Thomas HARGROVE et al.[1]**

v.

**Meghan McGINLEY et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 18, 2001.

Decided Feb. 21, 2001.

---

1. In the underlying action, Thomas Hargrove and Benjamin Keene are plaintiffs, and Meghan McGinley and Kevin Scott are defendants.

Arthur J. Greif, Esq., Gilbert & Greif, P.A., Bangor, for plaintiffs.

William J. Kelleher, Esq., Augusta, for Meghan McGinley.

Richard N. Hewes, Esq., Portland, for Kevin Scott.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Thomas Hargrove and Benjamin Keene appeal from the judgment entered in the Superior Court (Knox County, *Marsano, J.*) upon a jury verdict in the amount of $10,000 for Hargrove and $1773.40 for Keene. Hargrove and Keene contend that the trial court erred by: (1) giving the jury an emergency instruction; (2) incorrectly instructing the jury on permanent impairment; and (3) failing to conduct a fair trial including, in one instance, directing counsel to make a statement intended for the court without the court present. Because the court's damages instruction confused the issue of permanent impairment with the issues of medical expenses and pain and suffering, we vacate the judgment in part.

## I. CASE HISTORY

[¶ 2] On the afternoon of August 24, 1996, a four-vehicle collision occurred on Route 1 northbound in Freeport. The vehicles were traveling toward downtown Freeport in slow moving, stop and go traffic. The first car was driven by Heather Hurd, who was not a party to the action but testified at trial. Hurd stopped when a vehicle in front of her came to a stop. Hurd's vehicle was hit from behind by the second vehicle driven by Thomas Hargrove, with Benjamin Keene as his passenger. Hargrove's vehicle was hit from behind by the third vehicle driven by Kevin Scott. The fourth vehicle driven by Meghan McGinley hit Scott's vehicle from behind. The evidence is conflicting on how closely McGinley was following Scott, and whether McGinley's vehicle struck Scott's vehicle before or after Scott's vehicle struck Hargrove's vehicle.

[¶ 3] Hargrove drove himself to the hospital, and Keene was transported by ambulance. Both men were evaluated and re-leased, after which Hargrove drove Keene and himself home. Both Hargrove and Keene received follow-up treatments. One doctor indicated that Hargrove had some permanent impairment resulting from the accident, while another expected that the symptoms Hargrove experienced from the collision would resolve.

[¶ 4] Hargrove and Keene brought suit alleging that Scott and McGinley's negligence caused the accident, and that their negligence was the proximate cause of Hargrove and Keene's injuries. Hargrove and Keene alleged that they incurred and will continue to incur "medical expenses, pain and suffering, lost earnings, lost enjoyment of life, and permanent impairment."

[¶ 5] A jury trial took place in February 2000. The jury found that McGinley was not liable for damages. The jury also found that Scott was negligent and awarded damages against Scott in the amount of $10,000 for Hargrove and $1773.40 for Keene. Hargrove and Keene then brought this appeal.

## II. EMERGENCY INSTRUCTION

[¶ 6] Hargrove and Keene (Hargrove for purposes of analysis) contend the court erred in giving the jury an emergency instruction. The emergency doctrine recognizes that one "'who is confronted with an emergency situation is not to be held to the same standard of conduct normally applied to one who is in no such situation.'" *Ames v. Dipietro–Kay Corp.*, 617 A.2d 559, 561 (Me.1992) (citing W. PAGE KEETON, PROSSER & KEETON ON THE LAW OF TORTS § 33, at 196 (5th ed.1984)). *See also* RESTATEMENT (SECOND) OF TORTS § 296 (1965). Hargrove does not claim that the instruction given was an incorrect statement of the law, but contends that the court erred in giving it because: (1) McGinley created the situation she faced by following too closely and not paying attention to the vehicles in front of her; (2) the situation

McGinley faced was neither sudden nor unexpected; and (3) McGinley had no choice of actions but to brake, which she belatedly did.

[¶ 7] While the evidence as to the order of collisions was in conflict, the jury could have concluded that there was an accident between the Scott and Hargrove vehicles directly in front of McGinley and that this created an unexpected emergency for McGinley. Accordingly, the decision by the court to instruct on the emergency doctrine was within the range of its discretion.

## III. PERMANENT IMPAIRMENT INSTRUCTION

■ [¶ 8] Hargrove requested a permanent impairment instruction which stated: "*Permanent impairment.* A sum which will compensate plaintiff reasonably for any permanent impairment which you find to be proximately caused by the defendant's negligence. Permanent impairment is an injury which will impair some member or system of the plaintiff's body for the rest of his life." [2] The court indicated that it would give a permanent impairment instruction, but the court described damages for permanent impairment as:

[A] sum which will compensate him for pain and suffering, mental anguish for any permanent impairment suffered by Tom Hargrove which you find to be proximately caused by either of the defendants or both of the defendant[s'] negligence. Permanent impairment is an injury which you find impairs some member or system of the plaintiff Tom Hargrove's body for the rest of his life.

2. In the *Maine Jury Instruction Manual,* the instruction for permanent impairment reads, in pertinent part:

A sum which will compensate plaintiff reasonably for any permanent impairment which you find to be proximately caused by the defendant's negligence.

Permanent impairment is injuries which will impair some member or system of the plaintiff's body for the rest of his/her life
. . . .

The court went on to instruct the jury that Hargrove had a life expectancy of 51.8 years, and that if, in making an award for pain and suffering and mental anguish, they found permanent impairment, they could use the life expectancy table and adjust the years upward or downward depending on Hargrove's health and working habits. The court then stated:

I again caution you; you should apply that life expectancy table in determining damages for pain, suffering, mental anguish past and future only if you first find that he suffered permanent impairment as a result of this accident. That's a little bit confusing. What you have to do first of all is to be aware of the fact that you must find—if you find for the plaintiff because he's proven that by a preponderance of the evidence, you must make an award for the concept on pain and suffering and medical [3] anguish, but if there is a permanent impairment, then you can consider life expectancy. You wouldn't consider life expectancy with respect to the others unless you were satisfied that it applied. There isn't any evidence that would allow you to do that. It's only with respect to permanent impairment that that element of damages would come in.

If you were to find the permanent impairment to have been proven by a preponderance of the evidence, then you may make an award for it within the scope of the general instructions for pain, suffering, pain and suffering and medical anguish.

After the instructions were completed, Hargrove's attorney objected, stating, "I

MAINE JURY INSTRUCTION MANUAL § 7–71 (4th ed.2000).

3. The transcript reflects that the court stated "medical" rather than "mental," and did so again in the final sentence of the excerpt. However, in the context of the instruction it appears likely that the court actually used the term "mental." Neither party invoked M.R. Civ. P. 74(e) (now M.R.App. P. 5(e)) to attempt to correct the record on this point.

would object to permanent impairment as being characterized as a subspecies of pain and suffering." Because a proper objection was presented, the court's instruction is reviewed for misstatements of law and prejudice. *See Harris v. PT Petro Corp.*, 650 A.2d 1346, 1349 (Me.1994).

[¶ 9] An award for permanent impairment provides damages to compensate for permanent loss, loss of use, restriction of motion or impairment of some bodily system or member. It addresses losses separate from pain, suffering, mental anguish or medical expenses. Although a condition which constitutes a permanent impairment may result in both medical expenses and pain, suffering and mental anguish, it is also possible to have a permanent impairment without either future pain, suffering and mental anguish or future medical expenses. Thus, permanent impairment, where properly generated, is an element of damages for the jury to consider separately from any other element of damage. *See, e.g., Roberts v. Tardif,* 417 A.2d 444, 452–53 (Me.1980) (where evidence supported instructions permitting plaintiff's recovery of damages for her permanent impairment as well as future loss of earnings).

4. One issue does, however, require comment. At one point in the trial, after the jury had been excused, Hargrove requested a limiting instruction. The court declined. Hargrove's counsel started to make a statement to "preserve the record." The transcript reflects what then occurred:

THE COURT: Just a moment. What I'm going to do I'll give you two minutes to give a statement on the record in the absence of me. I want for (sic) make sure that the reporter is out of here by 20 minutes of three by that clock. I'm instructing the reporter to leave at 20 minutes to three.
(whereupon the judge excused himself)
After the court departed, Hargrove's counsel stated that he moved to strike certain testimony as improper character evidence. Scott's attorney responded. The attorneys recessed. After the recess, Hargrove's attorney moved to strike, and the court stated that the motion was not timely and was denied.
This is the third case that has come before us involving the same judge absenting himself

[¶ 10] The court erred in giving a jury instruction which mixed the concepts of permanent impairment and pain, suffering and mental anguish and treated permanent impairment as an element of pain, suffering and mental anguish. Hargrove's proposed instruction was a correct statement of the law generated by the evidence. Further, the court's error cannot be considered harmless, M.R. Civ. P. 61, as the jury may have awarded additional damages for permanent impairment had they been properly instructed.

## IV. TRIAL MANAGEMENT ISSUES

[¶ 11] The record reflects that the trial was quite contentious. Considering this circumstance and the broad range of discretion accorded to the presiding judge in managing the progress of a trial, we determine that the other challenged rulings do not amount to clear error or abuse of discretion and to the extent there was error in any of the other rulings, it was harmless error.[4] Hargrove has not demonstrated that the trial was fundamentally unfair.

The entry is:

from an attorney's attempt to make a statement to the court, leaving the attorney to make a statement on the record without the court present. In *Walter v. Wal–Mart Stores, Inc.*, 2000 ME 63, 748 A.2d 961, decided after the trial in this case, the court also left the courtroom and directed counsel to make comments on the record. We stated that while we did not condone such conduct, it did not amount to reversible error in that jury trial. *Id.* ¶ 38, 748 A.2d at 973. In *State v. McMahan*, 2000 ME 200, 761 A.2d 50 (a trial which also took place before *Walter* was decided), we held that the court's absence during an offer of proof in a bench trial was error requiring us to vacate the judgment. *Id.* ¶ 18, 761 A.2d at 55.
Here, as in *Walter*, there was no prejudice requiring reversal. Because of prior discussion about a motion in limine, the court was apprised of the issues. Therefore, while the practice of being absent during offers of proof or arguments regarding evidence is again disapproved, we do not vacate the entire judgment.

Judgment vacated in part. Remanded for a new trial between Hargrove and Scott, limited to the issue of damages. In all other respects, the judgment is affirmed.

