822 A.2d 1201 (2003)
2003 ME 60
Lavon S. AMES III
v.
Crystal D. AMES.
Supreme Judicial Court of Maine.
Argued: October 9, 2002.
Decided: April 28, 2003.
*1204 Robert Joel Rubin (orally), Cheryl B. Ayer, Rubin & Strout, P.A., Ayer Law Office, Rockport, for plaintiff.
Robert J. Levine (orally), Strout & Payson, P.A., Rockland, for defendant.
Panel: SAUFLEY, C.J., and RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.
DANA, J.
[¶ 1] Lavon Ames (Lavon) appeals from the judgment of the District Court (Rockland, Worth, J.) denying his motion to hold Crystal Ames (Crystal) in contempt and for enforcement of the child visitation provisions of their divorce judgment. Lavon also challenges the court's increase in his child support obligation. Lavon contends that the District Court improperly admitted hearsay and unfairly prejudicial evidence, improperly applied the burden of proof in the contempt proceeding, and improperly increased his child support obligation. We disagree and affirm the judgment.

I. BACKGROUND
[¶ 2] Lavon and Crystal were divorced in 1999. Lavon shares a home on Vinalhaven Island with his girlfriend, and their young daughter. He works as a lobsterman. Crystal lives on nearby North Haven Island and works as a babysitter and house cleaner. The divorce judgment provided that Lavon and Crystal share parental responsibility for their then five-year-old son and that the child live primarily with Crystal. The judgment also provided a schedule for contact between Lavon and the boy, including overnight visitation every other weekend, one additional overnight per month, and unlimited telephone contact prior to 6:45 P.M. Taking into consideration that Lavon's work schedule depended on weather conditions, the judgment also allowed Lavon to reschedule visitation, with twenty-four hours notice, at a mutually convenient time. According to the judgment, Lavon was also required to pay child support of $159 per week, based on his then approximate annual income of $75,000.
[¶ 3] Between January 2001 and December 2001, Lavon had approximately sixteen nights of contact with his son, in contrast to the five nights per month provided by the divorce judgment. Believing that the lack of contact was due to Crystal's interference and that his annual income had decreased as a result of new lobster trap limits, Lavon filed a motion for contempt and enforcement of the child contact provisions of the divorce decree, and for modification of child support. Crystal responded, denying that she had interfered with Lavon's visitation and claiming that Lavon's income had actually increased, justifying an increase in his child support obligations.
[¶ 4] Specifically, Crystal explained that she did not interfere with visitation but that their son refused to visit Lavon. She said she tried to encourage visitation, but that the child did not want to visit Lavon because he was afraid of him. One-and-a-half years after the divorce, the child began displaying problems with concentration, sleep, anger, fear, and stomachaches.
[¶ 5] Crystal sought the advice of Lesile Devoe, a licensed clinical social worker, who began counseling the child regularly. By determining why the child was avoiding his father, Devoe hoped to address the child's concerns and help him become comfortable with his father. According to Devoe, the child told her he was scared of his father and that it was his idea, not his mother's, to stop visitation. Crystal told Devoe that Lavon had abused her repeatedly, *1205 once in the presence of his son; Lavon was bi-polar and not taking his medication; he had also abused a cat and a dog and was currently abusing his girlfriend.
[¶ 6] Based partly on this uncorroborated information from Crystal and the child's comments, Devoe determined that Lavon's history of abuse with Crystal, his current girlfriend, and animals made the child afraid of his father and concerned for his mother's safety. Devoe recommended that Crystal not force visitation, and Crystal followed her advice. When Crystal made this decision, she did not attempt to modify the divorce judgment or amend the visitation terms, despite the fact that the judgment was fully in effect and clearly bound Crystal to its terms.
[¶ 7] Devoe testified at trial to both the child's statements, that he feared his father and did not want to visit, and to Crystal's uncorroborated reports of abuse. Also at trial, Police Officer James Moore testified to more recent complaints of domestic disputes between Lavon and his girlfriend.
[¶ 8] In reference to Lavon's motion for modification of support, Lavon claimed that his annual income had decreased from $75,000 to $34,263 in 2000 because new trap limits reduced the number of traps he could fish from 1200 to 800. The court admitted Lavon's 2001 tax return, showing an income of $25,135.
[¶ 9] Crystal responded that Lavon's income had actually increased. In her answer to Lavon's complaint, she denied that Lavon's circumstances had changed in a manner that warranted a decrease in his child support obligation and asserted "the child support obligation for the Plaintiff justifies an increase not a decrease." At trial, she introduced evidence of his large bank accounts, numerous cash transfers, and newly acquired $192,000 house. Lavon had also made $32,000 in mortgage payments between March 2, 2000, and January 3, 2001, bought a new $22,000 truck and a $5000 skiff with cash, and owned other property on Vinalhaven and Matinicus, available for rental. Finally, Lavon's sternmen each earned over $82,000 in 2000, and $71,000 in 1999. Lavon admitted that his sternmen are paid between fifteen and twenty-one percent of the value of his haul.
[¶ 10] The District Court entered an order on March 14, 2002, denying the contempt/enforcement portion of the motion and ordered an increase in Lavon's child support obligation. The court concluded that the burden rested on Lavon to prove clearly and convincingly not only that Crystal had disobeyed the visitation provisions of the court order, but also that her disobedience had been contemptuous. The court then employed a "best interest" analysis and determined that Crystal had established that she had encouraged contact between Lavon and his son, facilitated visitation when the child wanted contact, and acted reasonably by not forcing the child to visit his father involuntarily. Based on these findings, the court concluded that Lavon had not established that Crystal's failure to comply with the visitation schedule was contemptuous.
[¶ 11] With respect to the modification of child support, the District Court found that Crystal had an imputed income of $11,960 and that Lavon was not "open, complete and clear about his financial situation." The court concluded that Lavon's annual income was $88,015, calculated his new child support obligation as $183.92 per week, and then applied the new obligation retroactively to January 25, 2001, the day after Crystal's response to Lavon's motion was docketed.

*1206 II. DISCUSSION
[¶ 12] We are asked to decide three issues: (1) whether the court properly admitted Devoe's testimony concerning the child's statement to her, Devoe's testimony as to Crystal's reports of abuse, and Officer Moore's testimony concerning the more recent reports of domestic disputes in Lavon's home; (2) whether the court properly applied the burden of proof in determining whether Crystal was in contempt when she failed to comply with the court-ordered visitation schedule; and (3) whether the court erred in increasing Lavon's child support and making that increase retroactive in the absence of a motion from Crystal requesting an increase. We consider each in turn.

A. Admissibility of Statements
[¶ 13] We review determinations concerning the relevancy of evidence for clear error but review the ultimate decision to admit evidence, subject to other challenges, more often for an abuse of discretion. State v. Howe, 2001 ME 181, ¶ 8, 788 A.2d 161, 163.
[¶ 14] First, Lavon challenges as hearsay Devoe's statement that the child told her he was afraid of his father. Lavon maintains that the statement was made for the purpose of a diagnosis that was "judicial" rather than medical, and therefore, is not within the M.R. Evid. 803(4) exception to hearsay.
[¶ 15] To preserve an objection to the admission of evidence for appellate review, M.R. Evid. 103(a)(1) requires "a timely objection or motion to strike ... stating the specific ground of objection, if the specific ground is not apparent from the context." Although Lavon objected to the admission of Devoe's statement generally, he never objected on the ground that it was not a statement made for the purpose of medical diagnosis or treatment.
[¶ 16] Even if Lavon had properly preserved his objection for appellate review, statements made pursuant to M.R. Evid. 803(4) for the purpose of medical treatment or diagnosis are admissible as exceptions to the hearsay rule when they are reasonably pertinent to diagnosis or treatment. We have said that the fact that an examination proves helpful to a party's case "does not detract from its medical nature" and, therefore, remains admissible pursuant to Rule 803(4). State v. Hebert, 480 A.2d 742, 748 (Me.1984). Here, the child's statements to Devoe explained the source of his fear. Devoe is a licensed clinical social worker who consulted with the child's pediatrician concerning his therapy. Given that the purpose of the treatment was to identify the cause of his fear and overcome it, this statement was pertinent to his diagnosis and treatment and properly admitted. The fact that this statement is useful to Crystal's case does not render it inadmissible. See id.
[¶ 17] Second, Lavon challenges as irrelevant and unfairly prejudicial Crystal's statements that he had abused her before their divorce. Pursuant to Rule 402, "all relevant evidence is admissible" except as otherwise provided. M.R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R. Evid. 401 (emphasis added). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." M.R. Evid. 403.
[¶ 18] Contrary to Lavon's assertion, the evidence of pre-divorce abuse was relevant to determining the cause of the child's fear of visiting with Lavon even though the child did not begin refusing visits until *1207 one-and-a-half years after the abuse. As a young child who witnessed abuse, it is possible he would not begin to manifest fear until he was able to understand and integrate his experience.
[¶ 19] Likewise, the court did not abuse its discretion in determining that the evidence was not unfairly prejudicial. While it bolsters Devoe and Crystal's testimony, its probative value is not substantially outweighed by the danger of unfair prejudice because Lavon had the opportunity to, and did, place the evidence in context by establishing that, if any abuse occurred, no abuse occurred after the divorce.
[¶ 20] Third, on appeal, Lavon challenges on relevance and prejudice grounds Officer Moore's testimony of recent complaints of domestic disputes between Lavon and his girlfriend. Although at trial Lavon objected to Moore's testimony as hearsay and to the form of some questions as open-ended, arguments not pressed here, he never objected to the testimony as irrelevant or as unduly prejudicial; therefore, he has not properly preserved these issues for appellate review. See M.R. Evid. 103(a)(1).[1]

B. Contempt
[¶ 21] Lavon contends that the court improperly shifted the burden of proof in the contempt proceedings, forcing him to prove that Crystal's admitted failure to comply with the divorce judgment was not justified. He maintains that after he produced evidence proving that Crystal had not complied with the divorce judgment, which she did not dispute, Crystal provided evidence that was not adequate to prove that she was unable to comply with the order. Because she did not adequately prove she was unable to comply, contends Lavon, the court erred in shifting the burden back to him to disprove Crystal's inability to comply.
[¶ 22] Absent any clear error in the underlying factual determinations, we review the denial of a motion for civil contempt for abuse of discretion. Zink v. Zink, 687 A.2d 229, 232 (Me.1996). For a court to find contempt, the alleged contemnor must be presently able to comply with the court's order. Wrenn v. Lewis, 2003 ME 29, ¶ 26, 818 A.2d 1005. When it is impossible for a party to comply, the party is not in contempt. Zink, 687 A.2d at 232-33. It is presumed that an alleged contemnor is presently able to comply when the order itself implies that he was able to comply at the time the order was issued; therefore, the moving party makes a prima facie case of contempt when the moving party establishes that the alleged contemnor has not complied with a valid court order. Id. at 232. Once the failure to comply has been established, "the [alleged contemnor] has the burden of production, of going forward with evidence of his inability to comply. The burden of persuasion, however, remains with the [moving party]." Id. (quoting Mitchell v. Flynn, 478 A.2d 1133, 1135 (Me.1984)).
[¶ 23] Here, the divorce judgment implied that Crystal was able to comply with the visitation provisions at the time the order was issued. Therefore, Lavon made *1208 a prima facie case of contempt when he established that she had failed to comply. At that point, Crystal had the burden of producing evidence of her inability to comply. She introduced evidence that she was not able to comply because her son did not want to visit his father, his unwillingness to visit his father manifested itself in a variety of debilitating physical and emotional problems, and the boy's counselor identified the source of the boy's problems as fear of his father and recommended that Crystal not force him to visit. This evidence satisfied her burden of producing sufficiently persuasive evidence that she was unable to comply.[2] The burden then shifted to Lavon, to disprove her inability to comply. He failed to introduce evidence sufficient to refute Crystal's reasons for not complying.
[¶ 24] Because Lavon must bear the ultimate burden of persuasion, we decline to hold Crystal to a standard that would demand that she conclusively prove her inability to comply. To do so would place the ultimate burden of proof on her, contrary to our established rule. See id. Lavon had the opportunity to rebut her evidence by introducing evidence that the child did want to visit him, that the child was not afraid of him and not experiencing physical and emotional problems, or that Crystal was contributing to the boy's fear or failing to encourage visitation. While Lavon introduced some evidence indicating that Crystal interfered with visitation, we cannot say that the District Court committed clear error when it found more credible Crystal's testimony that she did not interfere with visitation, but rather encouraged it. See State v. Harper, 675 A.2d 495, 497 (Me.1996) ("[D]eterminations of witness credibility are the exclusive province of the [fact-finder]."). Crystal's placing the child in therapy with a counselor represents a good faith attempt to cure the problem and demonstrates her own willingness to comply with the court order. We, therefore, conclude that the court did not err in denying Lavon's motion for contempt because Crystal was unable to comply with the visitation provisions of the divorce judgment.
[¶ 25] Likewise, the court did not err in considering the child's "best interest" when considering Lavon's motion. The court should consider the "best interest" of the child whenever "making an award of parental rights and responsibilities with respect to a child." 19-A M.R.S.A. § 1653(3) (1998 & Supp.2002). Moreover, the court did not give primacy to the child's preference in its "best interest" analysis. See Cloutier v. Lear, 1997 ME 35, ¶ 8, 691 A.2d 660, 663. In addition to the child's preference, the court considered evidence of Lavon's past abuse of Crystal, the child's exposure to abuse, and the child's physical and emotional problems. See 19-A M.R.S.A. § 1653(3)(L) (1998). We, therefore, find no error in the *1209 court's decision to deny Lavon's motion for contempt.

C. Child Support Obligation
[¶ 26] Lavon maintains that the trial court improperly increased his child support obligation because Crystal had not filed a motion requesting that relief. He contends that the proper vehicle for modification of child support is a motion filed pursuant to M.R. Civ. P. 80(k). Even if the issue was properly before the court, Lavon argues that the evidence was not sufficient to support a finding that his income had increased.
[¶ 27] We do not disturb the trial court's determination of child support unless the decision violates a positive rule of law or reaches a plainly and unmistakably unjust result. Fowler v. Fowler, 1997 ME 231, ¶ 6, 704 A.2d 373, 374. And, "[c]hild support orders may be modified retroactively but only from the date that notice of a petition for modification has been served upon the opposing party, pursuant to the Maine Rules of Civil Procedure." 19-A M.R.S.A. § 2009(2) (1998).
[¶ 28] Lavon relies on our decision in Longo v. Goodwin, 2001 ME 153, 783 A.2d 159, to support his argument that the issue of increasing his child support obligation was not properly before the court. He points to our statement: "Apparently Longo views the statute [19-A M.R.S.A. § 2009(2) (1998)] as allowing a party upon whom a motion for child support modification is served to ask that any modification be retroactive. The statute, however, only allows a moving party to ask for retroactivity." Longo, 2001 ME 153, ¶ 10, 783 A.2d at 161. We based this holding on the policy behind the statute, "that the party who may be adversely affected by a change in the child support amount be put on notice that the amount may change and that the change may be retroactive to the date of notice." Id. ¶ 11. Because Crystal did not file a Rule 80(k) motion, Lavon contends that he did not have proper notice of the potential increase in his child support obligation and that the increase cannot be retroactively applied. Therefore, he argues, she was not a moving party and could not ask for retroactivity. We disagree.
[¶ 29] In Longo, the child's mother initially made a motion to modify parental rights, requesting that Longo no longer be permitted unsupervised contact with the child. Id. ¶ 3, 783 A.2d at 160. The motion also included a statement that the parties agreed to increase Longo's child support obligation. Id. Almost two years later, after mediation failed to resolve the parties' issues, Longo filed a request for a hearing on the mother's original motion. Id. ¶ 5. He indicated that at the hearing, he intended to request that his child support obligation be reduced retroactively from the time he was first served with the motion to increase his obligation. Id. Later, the court permitted the mother to withdraw her motion. Id. ¶ 6. Longo filed a motion, requesting the court to set aside its decision to allow the mother to withdraw her motion and argued that in allowing her to withdraw her motion, the court had foreclosed him from seeking to have any subsequently established decrease applied retroactively. Id. ¶ 7, 783 A.2d at 160-61. We concluded that withdrawal of the motion did not prejudice Longo because he had never moved to modify his child support obligation. Id. ¶ 10, 783 A.2d at 161. In other words, he could not attempt to have a decrease applied retroactively because he had never moved for a decrease. See id. We found that Longo did not place "himself in the purview of section 2009(2) because he did not put Goodwin on notice that he was asking for a *1210 modification and asking that the modification be made retroactive." Id. ¶ 11.
[¶ 30] Here, the issue of increasing Lavon's obligation was before the court. Crystal put Lavon on notice that his child support obligation might be increased and applied retroactively when she replied in her response to Lavon's motion to modify: "the child support obligation for the Plaintiff justifies an increase not a decrease." According to M.R. Civ. P. 8(f), we must construe all pleadings "so as to do substantial justice." Therefore, we construe Crystal's response as properly notifying Lavon of the potential adverse effect of a change in support. This construction is consistent with the principle that once an issue is generated by a pending motion, it is within the court's authority to "fashion an award to serve the children's best interest." Hinkley v. Hinkley, 2000 ME 64, ¶ 9, 749 A.2d 752, 754. We conclude, therefore, that the issue of increasing Lavon's child support obligation and applying it retroactively was properly before the court.
[¶ 31] Finally, we find no error in the court's determination, based on the evidence presented, that Lavon's child support obligation should be increased. Although Lavon's tax returns indicated that his annual income has decreased, the court was not bound by those documents.
The entry is:
Judgment affirmed.
NOTES
[1] We have addressed the three issues regarding admissibility of statements as they were raised by the parties in their arguments to us. We also note that because Crystal's justification for her acts or failures to act and Crystal's capacity to perform in accordance with the Court order were essential issues in this contempt matter, M.R. Civ. P. 66(d)(2)(D)(ii), all of the challenged statements would have been admissible on the issue of what Crystal knew or believed that may have caused her to act, or fail to act, as she was alleged to have done.
[2] See Piercey v. Piercey, 727 N.E.2d 26, 32 (Ind.Ct.App.2000) (mother not held in contempt because her violation of court-ordered visitation was not willful when she refused to allow her son to visit his father following her son's release from the hospital and his doctor's recommendation that he should not ride in a car for the amount of time it took to reach his father in Cincinnati and that he remain close to the hospital where he had been treated until his condition stabilized). We take care to distinguish this situation from one in which a child simply refuses to visit a non-custodial parent and the custodial parent claims inability to comply with court ordered visitation. See, e.g., In re Marriage of Rideout, 110 Wash.App. 370, 40 P.3d 1192, 1196 (2002) (summarizing states' varied approaches to this issue and finding that custodial parent acted in bad faith and was properly held in contempt when the parent "contributed to [the child's] recalcitrance and failed to make reasonable efforts to require her to visit [her father]").