2004 ME 150

**Gregory COYNE**

v.

**Greg PEACE.**

Supreme Judicial Court of Maine.

Argued: Nov. 17, 2004.

Decided: Dec. 14, 2004.

Anthony K. Ferguson, Esq. (orally), Fales & Fales, P.A., Lewiston, for plaintiff.

Catherine R. Connors, Esq. (orally), Pierce Atwood, LLP, Portland, J. William Druary, Esq., Marden Dubord Bernier & Stevens, Waterville, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Gregory Coyne appeals from a judgment by the Superior Court (Cumberland County, *Warren, J.*), following a jury verdict finding that Greg Peace was not liable for injuries to Coyne. Coyne asserts that the court erred in (1) instructing the jury on the emergency doctrine; (2) allowing evidence and comment that Peace was surprised when originally served with the action nearly six years after the event; and (3) permitting defense counsel, in his closing argument, to address the jury using the term "you" and to refer to the complaint being filed three days before expiration of the statute of limitations. Finding no error of law or unsustainable exercise of discretion in the trial court's management of the proceedings, we affirm.

## I. CASE HISTORY

[¶ 2] Gregory Coyne and Greg Peace were friends. On March 16, 1997, they went snowmobiling together on marked and groomed snowmobile trails on land in the vicinity of Moosehead Lake. As they were snowmobiling, with Peace following Coyne, they came upon several snowmobiles and a snowgroomer stopped in the trail. This required Coyne and Peace to maneuver outside the regular pathway in the snowmobile trail. As they were proceeding into an intersection with a woods road, Coyne suddenly hit a bump or snow bank and was thrown from his snowmobile, landing in the trail in front of Peace. Peace attempted to avoid hitting Coyne and was thrown from his own snowmobile in the process. Peace testified that he did not think his snowmobile hit Coyne because of the position of his snowmobile after the accident. Evidence presented by Coyne indicated that, as a result of the accident, he suffered injuries to his neck and has ongoing problems with pain, memory loss, and heightened agitation. Coyne indicated that he has no memory of what caused his injuries.

[¶ 3] On March 13, 2003, three days before the six-year statute of limitations was to expire, 14 M.R.S.A. § 752 (2003), Coyne filed his compliant and served it on Peace two weeks later. The complaint asserted that Peace was negligent in his operation of the snowmobile and sought recovery of damages.

[¶ 4] The case was tried to a jury in March 2004. In his opening statement to the jury, Coyne's counsel described his theory of Peace's negligence as follows:

> Greg Coyne traveled into the woods road when he hit this hump, bump or remnants of a snow bank. He got bounced off his snowmobile and landed in the roadway. His snowmobile continued, but because, as I said, they have a

kill switch, it eventually stopped a little further along. Greg Peace saw this. Because he was traveling too closely, he did not feel that there was opportunity for him to stop in time without hitting his friend, Greg Coyne, so he attempted to both brake and move off the trail to the left. When he went off to the left, his snowmobile went up on the snow bank causing it to flip over and in ... and he was thrown from his snowmobile, and we believe the evidence will show that the snowmobile then struck Greg Coyne who was, as I said, now in the roadway.

[¶ 5] On three occasions during the trial, Coyne objected to references to the length of time between the event and the filing of the suit. During opening statements, Peace's counsel asserted that the accident had happened seven years ago and the filing of the lawsuit was "a complete surprise" to Peace. During the trial, Peace testified that he learned about the suit only when he was served with it in March 2003. During closing argument, Peace's counsel asserted that there were investigations of the incident, but the results were unavailable due to the delay in the filing of the action. The court sustained Coyne's objections to references to unavailability of materials and individuals from the investigation of the accident but otherwise allowed the comments to which Coyne objected.

[¶ 6] During closing arguments, Peace's counsel asserted that Peace had been served with the complaint only three days before expiration of the statute of limitations.[1] Peace's counsel also addressed the jury as "you" in inviting them to imagine a situation similar to Peace's driving behind another snowmobile at a certain distance and how they might react to a sudden stop of the snowmobile in front. Coyne did not object to these portions of the argument.

[¶ 7] Prior to closing arguments, counsel and the court discussed the court's jury instructions. Coyne objected to the court giving an emergency instruction. *See Maine Jury Instruction Manual* § 7–67 at 7–66 (4th ed.2004). Coyne asserted that a general negligence instruction was sufficient to cover the issue, considering that the general negligence instruction directed the jury to evaluate the standard of ordinary care "under the circumstances considering all of the evidence in the case." *See id.* § 7–61 at 7–58 (4th ed.2004). Coyne also asserted that the emergency instruction was a vestige from doctrines developed in the contributory negligence era that had no place under the law of comparative fault. *See* 14 M.R.S.A. § 156 (2003). Further, Coyne argued that giving the emergency instruction had the effect of improperly commenting on the facts, *see* M.R. Civ. P. 51(c),[2] and highlighting Peace's theory of the case.

[¶ 8] Without highlighting the emergency instruction in any way, the court instructed the jury regarding the emergency doctrine immediately after its definition of negligence, which noted that: "[t]he de-

1. The suit had been initiated by filing a complaint three days before the statute of limitations expired. However, Peace was actually served with the suit eleven days after what would have been the expiration of the statute of limitations. The filing of the suit served to commence the action for purposes of the statute of limitations. M.R. Civ. P. 3(2).

2. M.R. Civ. P. 51(c) states:

(c) Summing Up and Comment by Court. In an action tried to a jury, at the close of the evidence and arguments of counsel, the court may fairly and impartially sum up the evidence, but shall not during the trial, including the charge, express an opinion upon issues of fact. Upon timely objection by an aggrieved party such an expression of opinion is sufficient cause for a new trial.

gree of care required depends on the circumstances." The court also instructed, as part of its definition of negligence, on several rules of the road regarding operation of snowmobiles.

[¶ 9] Following deliberations, the jury rendered a verdict finding that Coyne had not proven that Peace was negligent in a manner that caused Coyne's injuries. The court entered a judgment in favor of Peace, and Coyne brought this appeal.

## II. LEGAL ANALYSIS

### A. Emergency Doctrine Instruction

[¶ 10] The emergency doctrine provides that a person confronted by an emergency that the person did not cause is not to be held to the same degree of care as an ordinary person with time to consider that person's actions. *See Hoch v. Doughty*, 224 A.2d 54, 56 (Me.1966). The test for reasonableness of the actions of a person confronted by an emergency is how a reasonably prudent person would have acted when confronted by the same or similar circumstances. *See id.*; RESTATEMENT (SECOND) OF TORTS § 296 (1965).[3] *See also Maine Jury Instruction Manual* § 7–67 at 7–66 (4th ed.2004).

[¶ 11] We have continued to recognize the validity of the emergency doctrine for jury instructions approved since the 1965 adoption of the comparative fault law, 14 M.R.S.A. § 156 (2003). *See Ames v. Di-*

*pietro–Kay Corp.*, 617 A.2d 559, 561–62 (Me.1992). Only three years ago, we rejected a claim, similar to Coyne's, that an emergency doctrine instruction should not be given because the issue was sufficiently covered in a general "consider all the circumstances" negligence instruction. In *Hargrove v. McGinley*, 2001 ME 36, ¶¶ 6–7, 766 A.2d 587, 589–90, plaintiff's vehicle, traveling in a line of traffic, collided with another vehicle. A vehicle behind plaintiff's vehicle was then struck by McGinley's vehicle with the chain reaction allegedly causing injuries to the plaintiff. *Id.* Plaintiff asserted that McGinley was traveling too fast, following too close, and inattentive. *Id.* Over plaintiff's objection, the court gave an emergency instruction and we affirmed, noting the continued validity of the instruction. *Id.*

[¶ 12] The circumstances here are very similar. A sudden unexpected accident threw the plaintiff, Coyne, into the traveled way in front of Peace, requiring him to react quickly to the unanticipated accident in front of him. In such circumstances, the instruction was proper; the court tailored the instruction to the case and the instruction was neither an impermissible comment on the evidence nor an incorrect statement of the law.

### B. Comment on Delay in Bringing the Action

[¶ 13] We review trial court determinations of relevancy of evidence ques-

---

3. The RESTATEMENT (SECOND) OF TORTS § 296 (1965) states:

(1) In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency which requires rapid decision is a factor in determining the reasonable character of his choice of action.

(2) The fact that the actor is not negligent after the emergency has arisen does not preclude his liability for his tortious conduct which has produced the emergency.

The RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL HARM (BASIC PRINCIPLES) § 9 (Tentative Draft No. 1, 2001) continues to recognize the emergency doctrine. Its Reporter's Notes identify some states that have rejected the practice of giving emergency instructions, but indicate that since 1980 "a majority of courts have continued to accept the practice of instructing on emergency." *Id.* at § 9, Reporters' note, cmt. c. (citations, including *Ames v. Dipietro–Kay Corp.*, 617 A.2d 559 (Me.1992), omitted).

tions for clear error, and we review the ultimate decision to admit or exclude evidence, subject to other challenges, for a sustainable exercise of discretion. *See Ames v. Ames*, 2003 ME 60, ¶ 13, 822 A.2d 1201, 1206. Evidence and argument about a long gap between an event occurring and the filing of suit is relevant in evaluating witnesses' ability to recall events and the incentive or lack of incentive one may have had to preserve evidence and conduct investigations when events were more recent and memories were clearer. Thus, evidence of the long delay in bringing the suit and comment on that delay was proper. While the comment by counsel that Peace was surprised by the filing of the suit is not relevant to any essential issue in the case, it was not so prejudicial as to justify vacating the judgment. M.R. Civ. P. 61.[4]

### C. Closing Argument

▮▮▮▮ [¶ 14] During the course of closing argument, counsel for Peace argued that the action had been brought only three days prior to expiration of the statute of limitations, and later invited the jury to consider Peace's situation as he operated the snowmobile by addressing the jury as "you." While Coyne now asserts that the court committed error in allowing each of these statements in argument, he made no objection at the time. Thus, our review of these matters is limited to obvious error. *Morey v. Stratton,*

---

4. M.R. Civ. P. 61 states:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which

2000 ME 147, ¶¶ 10–11 & n. 3 756 A.2d 496, 499. Obvious error is error that constitutes such a serious injustice that reversal is necessary because we could not in good conscience let the judgment stand. *See State v. White*, 2002 ME 122, ¶ 8, 804 A.2d 1146, 1149. No such error is demonstrated here.

The entry is:

Judgment affirmed.

does not affect the substantial rights of the parties.

