STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.


MARK BLACKLER,                          )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )
                                        )          Docket No. PORSC-CV-15-412
DAIRYLAND/SENTRY    INSURANCE           )
COMPANY,                                )                STATE OF MAINE
                                        )          Cumberland, ss. Clerk's Office
          Defendant                     )
                                                        DEC 0 1 2016

               DECISION AND JUDGMENT              RECEIVED

     This civil action came before the court for a jury-waived trial November 22, 2016, with

both parties participating through counsel and presenting evidence.     The trial was

electronically recorded.  The only live witness was Plaintiff Mark Blackler, and the deposition

testimony of Michael Brewer was also admitted by stipulation.  After the trial, each party filed a

post-trial memorandum.

     Based on the entire record, the court adopts the following findings of fact and

conclusions of law and renders judgment as set forth below.  All affirmative findings of fact are

made by a preponderance of the evidence.

     1.  At all relevant times, Plaintiff Mark Blackler has been a resident of Jefferson, Maine.

He has been married to Tamara Blackler for about 28 years and they have two adult children.

Mr. Blackler has been employed as a framing and finish carpenter for most of his career.

Initially, he was working for other contractors but in the late 1990's or early 2000's he became

self-employed.   He has worked on various projects for various clients, including high-end

1

clients. Due to the nature of his work, he has experienced some shoulder problems and has had cortisone injections in both shoulders to relieve pain.

2. As of 2014, Plaintiff owned a 2006 Harley Davidson motorcycle, VIN 1HD1KAV106Y694445, that was covered by a policy of insurance issued by Dairyland Cycle Insurance/Dairyland Insurance Company, having policy number ME174150800. The policy was in effect as of June 19, 2014 and applies to the accident that gives rise to this lawsuit.

3. On June 19, 2014, Plaintiff Blackler was riding the motorcycle home from work northbound on Route 1 in Edgecomb. The day was warm and clear and the roads were dry.

4. At about 5 p.m., not long after he had crossed the bridge from Wiscasset to Edgecomb, he was in a line of traffic traveling at or near the near the Pyro City Fireworks Store on the east side of Route 1. The speed limit in that area of Route 1 is 40 or 45 miles per hour, and the line of northbound vehicles within which Plaintiff was riding his motorcycle was traveling at or near the speed limit. The vehicle directly in front of Plaintiff stopped in the travel lane and signaled a left turn. It did not leave skid marks as it came to a stop. The vehicle was a small passenger car similar to a Toyota Corolla. It had stopped within the northbound travel lane.

5. At that place, Route 1 consists of a travel lane in each direction, separated by a double yellow stripe. The outside edge of each travel lane is marked by a single white fog line stripe, beyond which there is a paved breakdown lane. At that place, the breakdown lane next to the northbound travel lane is wide enough to accommodate a medium to small sized car or a motorcycle like the one Plaintiff was driving. In other words, at the place where the left-turning car stopped in front of Plaintiff's motorcycle, there is ample room for northbound cars and motorcycles to pass a stopped, left-turning vehicle on the right, by entering the paved breakdown lane.

2

6. When Plaintiff first saw that the vehicle had signaled a left turn, he logically and reasonably assumed, given that there was no oncoming traffic that the vehicle would complete the signaled turn. However, the vehicle did not turn—it could have turned because there was no traffic ahead of it, but Plaintiff then realized that the vehicle was not turning because there was no driveway or other area across the roadway for it to turn into. Plaintiff slammed on the brakes of the motorcycle to avoid colliding with the stopped vehicle, causing the motorcycle tires to leave a long, black skid mark on the pavement. The motorcycle started to slide sideways and Plaintiff had to let go of it. As the motorcycle went out from under him, he hit the pavement on his left side and rolled, while the motorcycle travelled a little farther.

7. While he was braking, Plaintiff could hear the squeal of brakes behind him as the driver of the vehicle behind him also was trying to come to a stop. It turned out to be a tow truck operated by a driver named Michael Brewer. It stopped short of where Plaintiff and his motorcycle had ended up, and Mr. Brewer got out and came to Plaintiff's assistance.

8. Although shaken up and injured, Plaintiff was able to stand up and walk. He began gathering broken pieces of the motorcycle from the roadway. Meanwhile, the driver of the stopped vehicle that had caused Plaintiff to crash got out of the vehicle and asked if Plaintiff was "OK." Exactly how Plaintiff responded is unclear, but he clearly was injured and shaken. In any case, the driver of the stopped vehicle returned to the vehicle and drove away, not making the left turn but continuing north. Neither the Plaintiff nor Michael Brewer noted the registration plate number on the vehicle before it departed, and neither the vehicle nor its driver has been located or identified.

9. Both Plaintiff and Michael Brewer testified that the vehicle ahead of Plaintiff stopped very suddenly, although the fact that the vehicle left no skid marks as it stopped plainly

3

suggests that it stopped much less suddenly than did Plaintiff's motorcycle when the Plaintiff braked.

10. The parties stipulate that "Plaintiff incurred medical bills in the amount of $32,107.67, as a result of injuries he received that were proximately caused by the event of June 19, 2014 that is the subject of this case." Plaintiff's and Defendant's Joint Stipulation ¶3. They also stipulate that, as a result of the June 19, 2014 accident, he had surgery on his left shoulder on January 28, 2015 and that his injuries were fully healed within eight to 12 months after the surgery. He thus claims no permanent impairment due to the accident, and no loss of income after the post-surgery recovery period of eight to twelve months.

11. To recover under his own policy's uninsured or underinsured motorist provisions, Plaintiff essentially has the same burden of proof that he would have if the driver of the vehicle that stopped in front of Plaintiff's motorcycle were the defendant in this case. This is because the purpose of uninsured/underinsured motorist coverage is "to permit an injured party to receive the same recovery as would have been available to him or her had the tortfeasor carried an equivalent level of insurance." _Molleur v. Dairyland Ins. Co._, 2008 ME 46, ¶10, 942 A.2d 1197, 1201.

12. This case presents a claim of negligence on the part of the driver of a "phantom vehicle"—meaning a driver and vehicle that have not been identified and are therefore considered to be uninsured for purposes of the plaintiff's own insurance policy. The plaintiff bringing such a claim must prove negligence on the part of the driver of the phantom vehicle, subject to a comparative fault defense, and must also prove damages proximately caused by the negligence of the unknown driver.

13. Here, Plaintiff has proved negligence on the part of the unknown driver by virtue of the unknown driver's failure to complete a signaled left turn. In a North Carolina case also

4

involving a situation in which a driver signaled a left hand turn but failed to complete the turn, and then was struck from behind by a following vehicle, the court observed:

> Plaintiff's evidence tended to show that defendant slowed down, started to turn left into a median crossover which separated the four-lane highway but failed to complete the turn. She stopped short, leaving between five to eight feet of the rear of her car in the left-hand lane of travel. A person who drives a motor vehicle upon this State's highways must exercise reasonable care to ascertain that he can turn safely from a straight course of travel. *The drivers of vehicles following defendant had the right to expect her to complete her turn and not stop short,* blocking the flow of traffic in the left-hand lane. The evidence tends to show negligence on her part.

*Horne v. Trivette,* 58 N.C. App. 77,79, 293 S.E.2d 290, 292 (1982) (citations omitted)(emphasis added). *See also Trainer v. Gibson,* 360 So.2d 1226, 1228-29 (Miss. 1978) (negligence may be found when a driver signaled a turn, causing other drivers "to reasonably believe a turn was being made; or had actually begun to turn the vehicle and then failed to complete the turn whether he had slowed his vehicle or not.")

14. Here, the evidence indicated that the driver of the vehicle ahead of Plaintiff stopped to turn at a point where there was no driveway or other area to turn into, and therefore failed to complete the turn. On the other hand, the evidence in this case also indicates a degree of comparative fault on the Plaintiff's part, although not a degree equal to or greater than the negligence or fault of the unknown driver. In determining the Plaintiff's degree of comparative fault, the court has considered the "emergency doctrine," which "recognizes that one 'who is confronted with an emergency situation is not to be held to the same standard of conduct normally applied to one who is in no such situation.'" *Hargrove v. McGinley,* 2001 ME 36, ¶6, 766 A.2d 587, 589, quoting *Ames v. Dipietro-Kay Corp.,* 617 A.2d 559, 561 (Me. 1992) (citing W. Page Keeton, Prosser & Keeton on the Law of Torts § 33, at 196 (5th ed. 1984)). The *Hargrove* case, like this one, involved an accident among vehicles in a line of traffic, and the Law Court upheld the application of the emergency doctrine to a driver who was suddenly confronted with stopped vehicles ahead.

5

15. In this case, Plaintiff Blackler was confronted with a vehicle that he reasonably thought was going to turn left, out of his lane of travel, but did not turn, causing him to have to react quickly. On the other hand, he plainly was traveling too fast and too close to the vehicle ahead of him to avoid an accident; had he been going more slowly and farther behind, he easily could have steered his motorcycle into the wide breakdown lane and passed the stopped vehicle on the right. Therefore, the emergency doctrine exonerates him from contributory fault to an extent, but not completely. Plaintiff was negligent, but less so than the unknown driver who signaled a turn but failed to complete the turn.

16. Accordingly, a reduction in damages to account for Plaintiff's lesser degree of comparative fault is appropriate, the extent of the reduction to be determined after Plaintiff's damages proximately caused by the accident are determined.

17. Plaintiff's claimed damages fall in three categories:

- he claims damages for the medical expense of $32,107.67 that the parties agree relate to injuries proximately caused by the accident. Subject to a reduction for Plaintiff's comparative fault, he is entitled to damages in that amount.

- Plaintiff claimed to have lost earnings as a self-employed finish carpenter from the date of the accident until late 2015, but his evidence did not support the claim. Due to an identity theft, he and his wife have not filed their federal or state income tax returns since 2012. His documentation of lost earnings consisted of a tax return transcript showing "net profit" of $66,361 in 2011, a partial tax return consisting of a 2012 Schedule C showing net income of $43,693 for that year; and invoices showing "gross receipts" of $51,607 for 2013, $55,366 for 2014 and $30,642. He acknowledged that the invoices were not complete. However, even assuming they were accurate, they show major

6

fluctuations in income that cannot have been due to the June 2014 accident. For example, the documents indicate that his earnings declined by more than one-third between 2011 and 2012. Although the accident occurred less than halfway through 2014, the invoices indicate he earned more that year than in the previous year. There is a drop in earnings indicated from 2014 to 2015, but the fluctuations in income coupled with the admittedly incomplete invoices mean that the court is not prepared to find or conclude that the drop from 2014 to 2015 was due to the accident. Accordingly, no award for lost earnings is made.

- Plaintiff did sustain conscious pain and suffering, at the time of the accident and thereafter, including at the time of his shoulder surgery and is entitled to $25,000 in damages. He is not making any permanent impairment claim.

18. The last step in the analysis is for the court to reduce the damages award to the extent of what is "just and equitable having regard to the claimant's share in the responsibility for the damage." 14 M.R.S. § 156. Accordingly, the court finds and concludes that it is just and equitable for purposes of section 156 to reduce damages from $57,107.67 to $30,000, and enters judgment in that amount, with costs.

IT IS HEREBY ORDERED AND ADJUDGED: Plaintiff Mark Blackler is hereby awarded judgment against Defendant Dairyland/Sentry Insurance Company in the amount of $30,000, with pre-judgment and post-judgment interest, and recoverable court costs as the prevailing party.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated December 1, 2016

_____
A. M. Horton, Justice

7