MAINE SUPREME JUDICIAL COURT                                     Reporter of Decisions
Decision:       2018 ME 104
Docket:         Wal-17-552
Submitted
  On Briefs:    May 31, 2018
Decided:        July 24, 2018

Panel:          SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

KATRINA I. PETERSEN

v.

PAUL J. VAN OVERBEKE

GORMAN, J.

[¶1]  Paul J. Van Overbeke appeals from a judgment of the District Court (Belfast, *Worth, J.*) modifying his child support obligation to Katrina I. Petersen regarding their minor child.  Van Overbeke argues that neither party requested that the court modify child support and that the court erred both by addressing the issue and in its calculations.  Because the court had authority to modify child support but erred in its calculations, we vacate the judgment and remand for the court to enter a judgment that correctly calculates the parties' child support obligations.

## I.  BACKGROUND

[¶2]  On November 20, 2008, the District Court (Belfast, *Mathews, M.*) granted a divorce to Van Overbeke and Petersen.  Pursuant to the judgment,

which was entered by agreement, the parties had shared parental rights to their then three-year-old child. In addition, the child's primary residence was to alternate every four months between Minnesota, where Van Overbeke lived, and Maine, where Petersen lived. Each parent was responsible for paying to have the child "delivered to the other." This arrangement was to continue until "the child is of age to start kindergarten in either state." The judgment required neither party to pay child support and explained that the deviation was based on "[t]he cost of travel related [to] the minor child." Child support documents attached to the divorce judgment show that, had child support been ordered pursuant to the guidelines, Van Overbeke would have been ordered to pay $89 per week.

[¶3] In 2009, each party filed a motion to modify, asking that the court establish a new contact/residence schedule for the child. In an agreed-to judgment dated July 26, 2010, the court (Waterville, *Dow, J.*)[1] ordered that the child would spend the school year with Petersen in Maine and the summers in Minnesota with Van Overbeke and made further arrangements for contact between the child and his father. Van Overbeke was made responsible for all

---

[1] In June of 2009, the court (Belfast, *Field, J.*) had granted Petersen's motion to change venue to the District Court in Waterville.

of the costs of transporting the child to and from Minnesota. The court ordered that Van Overbeke would pay no child support and stated that the deviation was based on Van Overbeke's assumption of the costs of transportation "and the substantial time of contact . . . during the summer months."

[¶4] On June 12, 2017, Van Overbeke filed a motion to modify in the District Court in Waterville. In his motion, Van Overbeke asked that the parental rights and responsibilities order be amended to order that the child spend the school year with him in Minnesota and the summers with Petersen in Maine. Petersen, not represented by counsel, responded. The court (*Ham-Thompson, M.*) held a case management conference and issued an order dated July 24, 2017, indicating that child support, among other issues, remained in dispute and that the case would be transferred back to the District Court in Belfast. The court (Belfast, *Worth, J.*) held a testimonial hearing on November 20, 2017, and made the following findings of fact in its order dated December 6, 2017.

[¶5] Van Overbeke lives in Minnesota with his second wife and their three children. He earns approximately $60,000 per year. Petersen lives in Maine, where she earns approximately $40,000 per year.

[¶6]   The child, who is now twelve years old, has lived with Petersen during the school year and with Van Overbeke in Minnesota in the summer since 2010.   He does very well in school and participates in a variety of activities.   Noting that the child "has had the same core group of friends since age 5, but is generous and compassionate enough to include other children in his friendships," the court determined that "[i]t would not be in the child's best interest to make a change in primary residence now."

[¶7]  Having denied Van Overbeke's motion to modify the child's primary residence, the court turned to the issue of child support, which it noted  "was identified as in dispute now."   In its judgment, the court found that there was a "substantial discrepancy between the parents' earnings."  The court's judgment modified the existing child support order by incorporating a child support worksheet and order that calculated the parties' support obligations.

[¶8]  The court's child support worksheet listed Petersen's gross income as $40,000 and Van Overbeke's gross income as $80,000.  The court adjusted Van Overbeke's income by $156 to $79,844, based on his imputed obligation to his other three children.   As for health insurance, the court made no adjustments because it found that "[t]he record does not show whether a parent pays for health insurance."  The order did invite the parties to "inform

the Court in writing" if they agreed that one parent did provide health insurance and stated that "a modified child support worksheet and order could be issued." The parties did not respond to the court's invitation.

[¶9] Based on these calculations, the court ordered Van Overbeke to pay Petersen $177 weekly while the child is living in Maine and suspended his obligation to pay when the child is with him in Minnesota. The court also ordered Van Overbeke to continue paying the child's transportation costs for travel to and from Minnesota and awarded Petersen the right to claim the child for income tax purposes. Van Overbeke appeals, challenging only that portion of the court's judgment that modifies child support. 19-A M.R.S. § 104 (2017); M.R. App. P. 2B(c); M.R. Civ. P. 123.

## II. DISCUSSION

A. Authority to Modify Child Support Order

[¶10] Van Overbeke contends that the court erred by modifying the existing child support order because the issue was "not raised by either party." His argument is best characterized as a contention that the court lacked the legal authority to modify the 2010 child support order because his motion to modify primary residence and parental rights did not bring the proceeding within the scope of 19-A M.R.S. § 2009 (2017). "We review de novo whether a

6

court has legal authority to take the action it has taken." *Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 64, 956 A.2d 110.

[¶11] Child support is intended to foster and protect the best interest of a child. *See* 19-A M.R.S. §§ 1653(1), (3), (8), 2007(3) (2017); *Court v. Kiesman*, 2004 ME 72, ¶ 9, 850 A.2d 330 ("The primary purpose of child support ordered by a court or administrative agency is to protect the best interests and welfare of the benefiting child."). Title 19-A M.R.S. § 2009 provides the procedure by which parties can seek modification of existing child support orders. *See* 19-A M.R.S. § 1653(10)(A) (2017) ("Modification and termination of child support orders are governed by section 2009."). Our cases interpreting this provision have long held that, so long as a motion to modify is properly before the court, if the motion itself—or the opposing party's response to that motion—puts the parties on notice that the amount of child support *may* change, the court has authority to modify the child support order to serve the child's best interest. *See Ames v. Ames*, 2003 ME 60, ¶ 30, 822 A.2d 1201 ("[O]nce an issue is generated by a pending motion, it is within the court's authority to fashion an award to serve the children's best interest." (quotation marks omitted)); *Longo v. Goodwin*, 2001 ME 153, ¶ 11, 783 A.2d 159 ("The policy behind [19-A M.R.S. § 2009] is to require that the party who may be adversely affected by a change

in the child support amount *be put on notice* that the amount *may* change . . . ." (emphases added)); *see also Hinkley v. Hinkley*, 2000 ME 64, ¶ 9, 749 A.2d 752 ("In this case, where the issue of medical decision-making was generated by a pending motion and the parties' presentations to the court, the court was authorized to fashion an award to serve the children's best interest . . . .").

[¶12]  We addressed a similar argument to that raised by Van Overbeke in *Ames*, 2003 ME 60, ¶¶ 26-30, 822 A.2d 1201.  In that case, the father filed motions for contempt, to enforce contact provisions, and to decrease his child support obligation.  *Id.* ¶ 3.  The mother never specifically moved to modify child support but, in her response to the father's motion, she stated that the father's higher income justified an increase in his support obligation.  *Id.* ¶ 9. When it denied the father's motions, the trial court nonetheless increased the father's child support obligation.  *Id.* ¶ 10.  On appeal, the father argued that because the mother never moved to modify child support, the trial court erred when it increased his support obligation.  *Id.* ¶¶ 11-12, 26.  We explained that, "[a]ccording to M.R. Civ. P. 8(f), we must construe all pleadings so as to do substantial justice" and "construe[d] [the mother's] response as properly notifying [the father] of the potential adverse effect of a change in support."  *Id.*

¶ 30 (quotation marks omitted). Thus, we held that the "issue of increasing [the father's] child support obligation . . . was properly before the court." *Id.*

[¶13]  Here, Van Overbeke's motion to modify, which was properly before the court, sought to change parental rights and responsibilities and the child's primary residence.  In his motion, Van Overbeke stated that he was seeking the "[s]ame child support agreement, just opposite."  Petersen responded to Van Overbeke's motion by filling out and filing with the court several forms related to family matters.  On one of the forms Petersen filed, she "ask[ed] the court to review the child support order and that Paul Van Overbeke be ordered to pay an appropriate amount for the care of [the child]."  Construing—as we must— Petersen's response "to do substantial justice," M.R. Civ. P. 8(f); *see Ames*, 2003 ME 60, ¶ 30, 822 A.2d 1201, we conclude that Petersen raised the issue of child support in response to Van Overbeke's motion.

[¶14]  We note also that there were two orders that put Van Overbeke on notice "of the potential adverse effect of a change in support."  *Ames*, 2003 ME 60, ¶ 30, 822 A.2d 1201.  First, in the July 24, 2017, case management order—issued just over a month after Van Overbeke filed his motion to modify—the court (Waterville, *Ham-Thompson, M.*) clearly identified child support as an unresolved issue still in dispute.  Second, in the pretrial/status

conference order issued after mediation and dated September 6, 2017, the court (Belfast, *Martin, M.*) required the parties to file their 2016 W-2 forms and most recent paychecks so that those documents could be attached to their child support affidavits. In addition, the court confirmed—during the hearing itself—that Petersen was requesting child support.

[¶15] Here, Petersen had sufficiently raised the issue of child support in response to Van Overbeke's motion to modify such that he had sufficient notice that his child support obligation may change. *See Longo*, 2001 ME 153, ¶ 11, 783 A.2d 159. The court therefore had the authority to modify the child support order in accordance with section 2009. *See Ames*, 2003 ME 60, ¶ 30, 822 A.2d 1201.

B. Calculation of Child Support

[¶16] Van Overbeke also argues that, even if the court had the authority to modify the child support order, it erred by calculating his support obligation at $177 per week while the child resides in Maine. We agree.

[¶17] "We review the trial court's award of child support for an abuse of discretion and its factual findings for clear error." *Holbrook v. Holbrook*, 2009 ME 80, ¶ 8, 976 A.2d 990 (quotation marks omitted). Based on that review, it is clear that the court's incorporated child support worksheet and

order are not fully supported by the record and contain determinations that directly contradict other findings in the court's judgment. First, the child support worksheet lists Van Overbeke's gross income as $80,000. That number is contrary to the finding in the court's judgment that his income is "about $60,000" per year, and the record contains no evidence that would support a finding that Van Overbeke makes $80,000 per year. Additionally, after finding that Van Overbeke was responsible for three additional minor children, the court was required to adjust his gross annual income based on a "theoretical support obligation" for those children pursuant to the child support guidelines. 19-A M.R.S. § 2006(5)(A) (2017). The court's adjustment of $156 annually to reflect his obligation for those children is erroneous. *See* 19-A M.R.S. § 2006(5)(A); 17 C.M.R. 10 144 351-15 to -23 (2016).

[¶18] Finally, the court erred by failing to include "[t]he amount for health insurance premiums" or "[a] requirement that private health insurance . . . be provided for the benefit of the child" in its parental support obligation. 19-A M.R.S. § 2006(8)(C)(5), (H) (2017). Although the court found that "[t]he record does not show whether a parent pays for health insurance," Van Overbeke's child support affidavit indicates that he pays for the child's health insurance and, at the hearing, the court itself reiterated Petersen's

request that "Van Overbeke *continue* to maintain [the child] on his health insurance." (Emphasis added.)

[¶19] Because of these errors in its calculations, the court "exceeded the bounds of its discretion" when it ordered Van Overbeke to pay $177 per week in child support for the weeks that the child resides in Maine.[2] *Payne v. Payne*, 2006 ME 73, ¶ 11, 899 A.2d 793. We remand the case to the trial court for it to calculate and order the correct amount of child support based on the evidence presented at the hearing and the parties' updated child support affidavits. *See* M.R. Civ. P. 108(a),(d)(4); 17 C.M.R. 10 144 351-15 to -23.

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

Michele D.L. Kenney, Esq., Houlton, for appellant Paul J. Van Overbeke

Aaron Fethke, Esq., Fethke Law Offices, Searsport, for appellee Katrina I. Petersen

Belfast District Court docket number FM-2008-22
For Clerk Reference Only

---

[2] In cases where an order contains such clear errors in the calculations of child support obligations, we encourage parties to file a motion to alter or amend the judgment pursuant to M.R. Civ. P. 59(e). By notifying the trial court of its error through a motion to alter or amend the judgment, the parties could have saved the time and expense associated with this appeal.