2005 ME 73

**Suzanne WHITE**

**v.**

**Chad NASON**

Supreme Judicial Court of Maine.

Submitted on Briefs: March 24, 2005.

Decided: June 17, 2005.

Anthony P. Shusta II, Madison, for plaintiff.

M. Michaela Murphy, Jabar, Batten, Ringer & Murphy, Waterville, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Chad Nason appeals from a judgment entered in the District Court (Skowhegan, *Vafiades, C.J.*) granting in part Suzanne White's motions for contempt and to amend the parties' divorce judgment. Nason argues that the court erred by (1) concluding that he violated the divorce judgment's prohibition on his possession or consumption of alcohol or illegal substances while the children were in his care in Maine, and (2) failing to consider his reduced earning capacity during his incarceration in connection with the modification of his child support obligation. We affirm the court's contempt finding, but vacate and remand for a redetermination of child support.

## I. BACKGROUND

[¶ 2] The following facts are undisputed. The parties' divorce judgment, entered in November 2002, awarded shared parental rights and responsibilities for their two children, now ages twelve and nine, with primary residential care awarded to White. The children reside with White and her fiancé in Utah. Nason lives in Skowhegan in the home the family lived in prior to the divorce. The divorce judgment awarded Nason rights of contact with the children at all reasonable, agreed-to times and when the children have school vacations

based on Utah's school calendar. The divorce judgment also provides that Nason "shall not consume any alcohol or other illegal substances while the children are in his care, nor will he have any alcohol or other illegal substances in his possession while the children are in his care while in Maine."

[¶ 3] After the divorce, Nason was arrested and convicted for two OUI offenses, which occurred in 2002 and 2004. For the second offense, Nason was sentenced to 364 days in jail, with all but thirty days suspended. At the time of at least one of his arrests, the children were visiting Nason in Maine, but spending the night at his mother's house. The District Court found that "the children were in [Nason's] care even though he had allowed them to sleep overnight at his mother's home."

[¶ 4] Prior to his incarceration, Nason was arrested for violating his bail conditions when he was found in possession of a firearm, marijuana, and drug paraphernalia. He was sentenced to serve an additional ninety days in jail. Soon after Nason violated his bail conditions, the children arrived in Maine for a scheduled visit, but Nason was already in jail.

[¶ 5] White filed a motion to amend the divorce judgment seeking to limit Nason's contact with the children and to require that his contact with them be supervised. She also sought a redetermination of the parties' child support obligations because of changes in the parties' income. Nason did not file responsive pleadings, a child support affidavit, or a child support worksheet. At the hearing, however, he argued that his child support obligation should have been suspended during his incarceration. White also filed a motion for contempt, alleging, among other things, that Nason had violated the divorce judgment's prohibition on his consumption or posses-sion of alcohol or other illegal substances while the children were in his care.

[¶ 6] At the time of the hearing on White's motions, Nason remained incarcerated, but was scheduled to be released in about a month. The court issued a child support order in August 2004 that assigned to Nason the same level of income established at the time of the divorce and increased Nason's child support obligation from $112 per week to $162 per week. The court denied Nason's request to have his child support obligation suspended while he was in jail, based on its finding "that it [was] not in the best interests of the children." The court also found, by clear and convincing evidence, that Nason was in contempt of the divorce judgment's prohibition on his use or possession of alcohol or illegal substances while the children were in his care, as evidenced by his OUI arrest and his possession of marijuana. This appeal followed.

## II. DISCUSSION

### A. Contempt

[¶ 7] In order to find a party in contempt pursuant to M.R. Civ. P. 66(d)(2)(D), a court must find, by clear and convincing evidence, that: "(i) the alleged contemnor has failed or refused to perform an act required or continues to do an act prohibited by a court order, and (ii) it is within the alleged contemnor's power to perform the act required or cease performance of the act prohibited." Evidence is clear and convincing when "the required factual findings were proved to be highly probable." *Shrader–Miller v. Miller,* 2004 ME 117, ¶ 20, 855 A.2d 1139, 1145 (quotation marks omitted). "It is well established that before a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties thereby imposed upon him." *Banker v. Bath Iron Works Corp.,*

507 A.2d 602, 604 (Me.1986) (quotation marks omitted). We review a trial court's judgment of civil contempt for a sustainable exercise of discretion. *See Richards v. Thompson,* 2004 ME 25, ¶ 6 n. 4, 842 A.2d 1289, 1292.

[¶ 8] Nason concedes that it was proven by clear and convincing evidence that he had possessed and consumed alcohol while the children were in Maine at the time he was charged with operating under the influence. He contends, however, that the prohibition on his possession or consumption of alcohol or other illegal substances "while the children are in his care while in Maine" does not prevent him from drinking alcohol while his children are in Maine and staying overnight at his mother's house. He contends that either the District Court misinterpreted the divorce judgment or that the judgment is too ambiguous to support the court's contempt finding.

[¶ 9] The language in the divorce judgment restricting Nason's behavior "while the children are in his care while in Maine" appears in the "Parental Rights and Responsibilities" section of the judgment following the discussion of rights of contact. A child can be under the care of a parent without regard to whether the child is in the immediate physical presence of the parent. Thus, a parent who is allocated the primary residential care for a child is exercising that responsibility whether the child is playing in the backyard, attending school or engaged in some other activity outside the home, or in the immediate care of an individual selected by the parent. The same is true for a parent who shares parental rights and responsibilities, but who is not allocated the primary residential care of the child. When a nonprimary residential parent exercises rights of contact with a child, the child is in that parent's "care" for purposes of a divorce judg-ment's allocation of parental rights and responsibilities, regardless of whether the child is in the physical presence of the parent or, as here, is left by the parent under the direct supervision of a grandparent or other temporary care provider.

[¶ 10] Contrary to Nason's assertion, the phrase in the divorce judgment, "in his care while in Maine," unambiguously refers to those times when Nason is exercising his rights of contact with his children and is not limited to the times when the children are in his immediate physical presence. The court did not err in finding contempt pursuant to Rule 66(d)(2)(D), because at the time Nason was arrested for OUI, his children were in his care even though they were sleeping at his mother's house.

**B. Effect of a Parent's Incarceration on the Determination of Child Support**

[¶ 11] Nason argues that the court erred in its determination of White's request to modify child support by failing to apply 19–A M.R.S.A. § 2001(5)(D) (1998), which limits imputed income for an incarcerated party: "A party who is incarcerated in a correctional or penal institution is deemed available only for employment that is available through such institutions." Nason was incarcerated continuously from May 3, 2004, through the date of the hearing in July and had an expected release date in mid-September 2004.

[¶ 12] The court found that as a member of the Ironworkers' Union, Nason has the ability to earn twenty dollars per hour over a forty-hour workweek, resulting in an imputed annual income of $41,600. The court also imputed to White, who was not working, an annual income of $13,000—the minimum average weekly wage for the State of Maine. Based on its determination of the parties' incomes, the court ordered a prospective increase in Nason's

weekly child support obligation from $112 per week [1] to $162.64 per week. The court expressly declined to suspend Nason's support obligation while he was in jail, stating that "it is not in the best interests of the children."

[¶ 13] The only evidence regarding Nason's work and income opportunities during his incarceration was his testimony that he was participating in the "two-for-one program" in which he was involved in a "road detail, wash[ed] vehicles when . . . they need[ed] 'em . . . at the sheriff's office [and] work[ed] in the kitchen." Nason also testified that he had maintained his union dues and that he expected to return to work as an ironworker once he was released from jail. Whether Nason could obtain employment as an ironworker at the rate of twenty dollars per hour while incarcerated appears to be unaddressed in the record.

[¶ 14] In determining child support, a court may impute income to a party based on that party's earning capacity: "Gross income may include the difference between the amount a party is earning and that party's earning capacity when the party voluntarily becomes or remains unemployed or underemployed, if sufficient evidence is introduced concerning a party's current earning capacity." 19–A M.R.S.A. § 2001(5)(D). The court's discretion to impute employment income is constrained by section 2001(5)(D) when a party is incarcerated. *Id.* Applying section 2001(5)(D), we are unable to determine whether the court engaged in a sustainable exercise of discretion when it imputed to Nason an earning capacity while incarcerated based on his ironworking skills. Imputing that earning capacity to Nason

would be justified if, for example, Nason could earn money as an ironworker through a work release or other program during the period of his incarceration.

[¶ 15] Accordingly, we vacate the court's judgment and remand for the court to reevaluate the evidence regarding Nason's earning capacity in conjunction with section 2001(5)(D). If the court concludes that Nason is entitled to a reduction in child support as a result of a reduced earning capacity associated with his incarceration, it must then, in the exercise of sound discretion, determine whether to make the reduction retroactive to the date of the hearing, the date of Nason's incarceration that resulted in his diminished earning capacity, or some other date. In any event, a retroactive reduction cannot precede the date of service of White's motion. *See Bartlett v. Anderson,* 2005 ME 10, ¶¶ 19–20, 866 A.2d 829, 834 (concluding that the trial court acted within the bounds of its discretion by making a child support reduction retroactive to the date the father lost his job, which was subsequent to the service of the mother's post-judgment motion, and that the trial court "was prohibited by [19–A M.R.S.A. § 2009(2) (1998)] from making any retroactive reduction for any time preceding the [service of the mother's] motion to modify"); *see also Longo v. Goodwin,* 2001 ME 153, ¶ 11, 783 A.2d 159, 161 (stating that the policy behind section 2009(2) "is to require that the party who may be adversely affected by a change in the child support amount be put on notice that the amount may change and that the change may be retroactive to the date of notice").

---

1. The original support obligation in the amount of $112 per week resulted from a downward deviation from $168.48 per week based on Nason's obligation to pay for the children's travel expenses. The original support obligation was based on Nason having a gross income of $41,600 per year and White having a gross income of $10,000 per year.

The entry is:

Judgment affirmed, except that the child support modification is vacated and this case is remanded for further proceedings consistent with this opinion. In view of the passage of time, the court may, in its discretion, receive additional evidence.