2012 ME 31

**Linda L. (Skehan) LEWIN**

**v.**

**Mark H. SKEHAN.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 30, 2012.
Decided: March 13, 2012.

Adam P. Sherman, Esq., Lewiston, for appellant Mark H. Skehan.

Karen M. Burke, Esq., Law Office of Karen M. Burke, Winthrop, for appellee Linda L. (Skehan) Lewin.

Panel: ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] Mark H. Skehan appeals from a judgment entered in the District Court (Augusta, *Mulhern, J.*) in favor of his former wife, Linda L. (Skehan) Lewin, on three post-divorce judgment motions. Specifically, Skehan appeals from the portion of the judgment granting Lewin's motion to modify certain provisions of the parties' 2009 divorce judgment and from the portion of the judgment granting Lewin's motion for contempt against Skehan.

[¶ 2] Skehan first argues that the court erred and exceeded its authority when it modified the 2009 divorce judgment to order Skehan to continue making payments towards the mortgage on the home that had been awarded to Lewin. Subsequent to the divorce, Lewin had unilaterally refinanced the home in her name only, thereby, Skehan argues, extinguishing the second mortgage for which Skehan had been ordered to be responsible in the 2009 divorce judgment. Second, Skehan argues that the court erred in finding him in contempt of the 2009 divorce judgment when he discontinued making payments to Lewin comparable to the payments he was to have made on the second mortgage after Lewin unilaterally refinanced the home.

[¶ 3] For the reasons discussed below, we vacate the portions of the court's order granting Lewin's motion to modify and granting her motion for contempt and remand for further proceedings.

## I. CASE HISTORY

### A. Facts Underlying the Post–Judgment Motions

[¶ 4] Linda (Skehan) Lewin and Mark Skehan were married in 1987, Lewin filed the action for divorce in 2008, and the parties were divorced pursuant to a judgment entered after a trial in April 2009. Under the heading "REAL ESTATE," the divorce judgment awarded real estate identified in the judgment, presumably the marital home, to Lewin. The judgment further ordered that Lewin was solely responsible for payment of the first mortgage on the property to Camden National Bank and that, except for the second mortgage on the property, Lewin was responsible for "any and all other debts, encumbrances, costs or expenses, ... now existing or hereinafter incurred, relating to said real estate, and [she] shall indemnify and hold [Skehan] harmless therefrom."

[¶ 5] The divorce judgment ordered that Skehan be "solely responsible for the second mortgage to Camden National Bank" and that he "shall indemnify and hold [Lewin] harmless from said second mortgage." The judgment also ordered the parties to sell several items of personal property, including a motorcycle. Although the judgment ordered that the proceeds of the sale of those items were to be used to pay down the principal balance on the second mortgage, it did not state a date by which the items were to be sold.

[¶ 6] Under the separate heading, "SPOUSAL SUPPORT," the divorce judgment ordered Skehan to pay Lewin $400 per month for twenty years, which award was subject to modification.

[¶ 7] Skehan filed a motion for findings of fact and conclusions of law, which was granted. In May of 2009, the court made the following pertinent additional findings:

4. The Court finds that, based upon [Lewin's] expected income and expenses as set forth in Plaintiff's Exhibit 1, with [Lewin] paying only the first mortgage on the real estate set aside to her, she will face a monthly deficit of between $400 and $500 per month. Based on the relative incomes of the parties and the factors set forth in 19–A MRSA § 951–A(5), the Court finds that [Skehan] should pay spousal support in the amount of $400.00 per month for a period of 20 years. The Court also finds that [Skehan] should assume responsibility for the second mortgage. The sale of the two ATVs, trailer, 2005 Honda [motorcycle] and pool table and the application of the sale proceeds toward the second mortgage is expected to reduce the balance from $22,000 down to approximately $11,000.

[¶ 8] In accordance with the divorce judgment, Skehan thereafter made monthly payments on the second mortgage totaling $225.94 in principal and interest directly to the bank and made monthly spousal support payments directly to Lewin. The second mortgage, which carried an interest rate of 7%, had a May 12, 2021, maturity date. Skehan would have, therefore, paid the second mortgage off in twelve years, or sooner if he made additional payments toward the principal.

[¶ 9] Between August and October 2009, the parties sold the personal items listed in the divorce judgment except for the motorcycle, and the proceeds went to pay down the principal balance on the second mortgage. Skehan took possession of the motorcycle from Lewin in or around October 2009 and planned to sell it the following spring.

B. The Post–Judgment Motions

[¶ 10] Without first notifying Skehan, Lewin refinanced the first [1] and second mortgages on the property in December 2009 by consolidating the two mortgages into one fifteen-year mortgage. Lewin's new single mortgage, obtained from Met-Life Home Loans, is in Lewin's name alone and has an interest rate of 4.75%.[2] Lewin also received a payment of $1785.29 from MetLife, apparently to rectify a bank error, which Lewin spent. As a result of Lewin's refinancing of the property, the $16,735.01 principal balance on the second mortgage, which Skehan had been ordered to pay, was paid in full.

[¶ 11] In a letter dated December 18, 2009, Lewin informed Skehan that she had refinanced the real estate "to remove [Skehan's] name from the mortgages and to incorporate the first and second mortgages into one mortgage on the house." Lewin advised Skehan in the letter that, beginning January 1, 2010, he "must send the amount [he was] paying on the second mortgage heretofore directly to" her. Lewin also requested information on the sale of the motorcycle and stated that proceeds from that sale must be paid over to her immediately. Skehan was upset when he learned of the refinancing because it foreclosed his ability to refinance the second mortgage for himself and foreclosed his ability to accelerate payments of principal on the second mortgage in order to pay it down more quickly.

[¶ 12] Skehan paid $225.94 monthly directly to Lewin from January 2010 through March 2010. As of April 1, 2010, Skehan stopped making the payments on

---

**1.** The first mortgage, a thirty-year mortgage, had an interest rate of 5.95% and a monthly payment of $317.47 per month in principal and interest.

**2.** Lewin's consolidated mortgage requires her to pay $486.15 monthly in principal and interest for fifteen years.

the advice of his attorney, apparently taking the position that the second mortgage had been extinguished when it was paid off through the refinancing, although he did continue to set aside $225.94 monthly into a savings account.[3]

[¶ 13] On April 6, 2010, Lewin filed a motion for contempt pursuant to M.R. Civ. P. 66(d), asserting that Skehan had failed to sell the motorcycle and that, beginning after March 2010, Skehan failed to pay toward the second mortgage. Lewin concurrently filed a motion to modify the divorce judgment, asking the court to award her the motorcycle and seeking modification to her spousal support. Skehan filed a motion to modify spousal support.

[¶ 14] Although he did not inform Lewin of this until the hearing on the post-judgment motions in August 2010, Skehan sold the motorcycle in late April or early May 2010. Skehan retained the net proceeds of $4800 from the motorcycle sale in a bank account.

[¶ 15] The court held a two-day hearing on the competing motions to modify and on Lewin's contempt motion. At the hearing, the court referred to Skehan's payment of the second mortgage under the divorce judgment as an allocation of debt. The court also observed at one point that "we wouldn't be here, I think, probably if [Skehan] had been consulted in connection with the refinance of the mortgage."

[¶ 16] In a written order, the court denied Skehan's motion to modify the spousal support award but granted Lewin's motion to modify. In granting Lewin's motion to modify, the court found that the divorce judgment allocated debt to Skehan in the form of the second

mortgage and that he was not relieved of responsibility for paying that debt by Lewin's refinancing and consolidation of the first and second mortgages. However, the court concluded that Skehan should benefit from the lower interest rate obtained by Lewin. Accordingly, based on its own calculations using a $16,000 principal balance attributed to Skehan's portion of the consolidated debt,[4] the court ordered Skehan to pay Lewin $161.52 monthly through May 1, 2021.

[¶ 17] The court also granted Lewin's motion for contempt, finding by clear and convincing evidence that Skehan had the ability to pay Lewin on his debt payments beginning April 2010 and that he did not do so, forcing her to file a motion for contempt. As a sanction for Skehan's contempt, the court ordered Skehan to pay Lewin the $4800 that he had received from the sale of the motorcycle in partial payment for Lewin's attorney fees. Skehan brings this appeal.

## II. LEGAL ANALYSIS

### A. Order Upon Finding of Contempt

[¶ 18] We first address the order finding Skehan in contempt of the 2009 divorce judgment for failing to make payments to Lewin equal to what he would have paid for the second mortgage before Lewin refinanced the property. We review the factual findings that form a basis for a court's decision regarding civil contempt for clear error. *Wrenn v. Lewis*, 2003 ME 29, ¶ 13, 818 A.2d 1005. A court's finding is clearly erroneous when there is no competent evidence in the rec-

---

**3.** After a judicial conference in June 2010, Skehan paid $600 in arrearages to Lewin and $200 per month toward the second mortgage.

**4.** Based on Skehan's payments of $225.94 a month to Lewin in early 2010, the court may have arrived at the $16,000 figure as a reduction from the $16,735.01 balance on the paid-off second mortgage.

ord to support it. *Id.* When there is no clear error in the factual findings, we review the judgment of civil contempt for an abuse of discretion. *Id.*

[¶ 19] "For a court to find a party in contempt, the complaining party must establish by clear and convincing evidence that the alleged contemnor failed or refused to comply with a court order and presently has the ability to comply with that order."[5] *Efstathiou v. Efstathiou,* 2009 ME 107, ¶ 11, 982 A.2d 339. Thus, "[a]n essential element of civil contempt is the defendant's ability to comply with the court's order." *Mitchell v. Flynn,* 478 A.2d 1133, 1135 (Me.1984). Although a party has an obligation to comply with a court order to the extent possible, even if that results in only partial compliance, *Efstathiou,* 2009 ME 107, ¶ 13, 982 A.2d 339, a party cannot be in contempt when it is impossible for the party to comply, *Ames v. Ames,* 2003 ME 60, ¶ 22, 822 A.2d 1201. For a person to be held in contempt for violating a court order, that court order must inform the person in definite terms what duties the order imposes upon him. *White v. Nason,* 2005 ME 73, ¶ 7, 874 A.2d 891.

[¶ 20] The motion court's determination of contempt was based on its explicit findings that (1) Skehan failed to make any debt payments as of April 2010, which contains the implicit finding that Skehan was required to pay directly to Linda the amount that, under the divorce judgment, he had paid directly to the bank on the second mortgage; (2) Skehan had the ability to make those payments; and (3) Ske-

han's failure to pay forced Lewin to bring a motion for contempt.

[¶ 21] The divorce judgment, and the court's subsequent findings of additional fact, state, without ambiguity, that Skehan was to be solely responsible for "the second mortgage to Camden National Bank." The divorce judgment further states that "[Lewin] . . . shall be solely responsible for . . . any and all other debts, encumbrances, costs or expenses, with the exception of the second mortgage to Camden National Bank, now existing or hereinafter incurred, relating to said real estate, and [she] shall indemnify and hold [Skehan] harmless therefrom."

[¶ 22] Pursuant to the unambiguous language of the divorce judgment, Skehan was responsible for making payments on the second mortgage directly to Camden National Bank. Once Lewin unilaterally refinanced the second mortgage, consolidating the debts of the first and second mortgages, the second mortgage was extinguished. It became impossible for Skehan to make payments on the second mortgage to Camden National Bank. The divorce judgment did not state in any terms, much less in definite terms, that Skehan would be responsible for making payments directly to Lewin with respect to the second mortgage in the event that she chose to refinance the property and effectively assume that debt. *See White,* 2005 ME 73, ¶ 7, 874 A.2d 891. In fact, the language of the judgment, stating that Lewin would be solely responsible for all debts, encumbrances, costs, or expenses incurred on the property after the divorce judgment, could be interpreted as making

---

**5.** It is presumed that the alleged contemnor has the present ability to comply with a court order if the order implies that he was able to comply at the time the order was issued. *Ames v. Ames,* 2003 ME 60, ¶ 22, 822 A.2d 1201. Once the moving party shows that the alleged contemnor has not complied with a

valid court order, the alleged contemnor bears the burden of producing evidence of his inability to comply. *Id.* ¶¶ 22–23. The burden of persuasion remains at all times, however, upon the party moving for a finding of contempt. *Id.* ¶¶ 22–24.

Lewin, not Skehan, solely responsible for all payments due upon her refinancing the property.

[¶ 23] Accordingly, even though Skehan had the financial ability to pay to Lewin an amount equal to his monthly mortgage payments, the record does not support the finding, to the clear and convincing evidence standard, that he was obligated to make payments directly to Lewin under the terms of the divorce judgment. Lewin's actions in refinancing the property made it impossible for Skehan to comply with the terms of the divorce judgment. Because there is no legally sufficient basis for the finding of contempt, we vacate the court's order of contempt, including the requirement that Skehan pay $4800 to Lewin in partial payment of her attorney fees as a sanction for the contempt.

## B.   Modification of the Divorce Judgment

[¶ 24] We review an order on a post-divorce motion for an abuse of discretion or error of law and review factual findings contained therein for clear error. *Hawksley v. Gerow*, 2011 ME 3, ¶ 4, 10 A.3d 715. We construe divorce judgments consistent with the intent of the divorce court, "as revealed in the language of the judgment." *Corcoran v. Marie*, 2011 ME 14, ¶ 16 & n. 4, 12 A.3d 71 (indicating that we are particularly deferential when, as here, the same judge who issued the original judgment also acted on the post-judgment motion).

[¶ 25] "Marital property" includes marital debt, which, like marital property, is divided pursuant to 19–A M.R.S. § 953(1) (2011). *See Hess v. Hess*, 2007 ME 82, ¶ 15, 927 A.2d 391; *Chamberlin v. Chamberlin*, 2001 ME 167, ¶ 4, 785 A.2d 1247; *Kapler v. Kapler*, 2000 ME 131, ¶ 13, 755 A.2d 502.

[¶ 26] Spousal support provisions of divorce judgments may be modified as authorized by statute, but courts generally do not have authority to modify a judgment's division of marital property or marital debt. *Copp v. Liberty*, 2003 ME 43, ¶ 9, 818 A.2d 1050 (stating that a court regains authority to revise a divorce judgment's division of property post-judgment only by operation of M.R. Civ. P. 60(b)); *Wardwell v. Wardwell*, 458 A.2d 750, 752 (Me.1983); *see also Black v. Black*, 2004 ME 21, ¶ 13, 842 A.2d 1280 (noting the strong public policy favoring the finality of property distributions). "A court may not, under the rubric of enforcement, modify the property to be distributed to each party as established in a divorce judgment." *Black*, 2004 ME 21, ¶ 12, 842 A.2d 1280. A court may, however, enforce a property distribution "by making adjustments to the mechanisms necessary for the distribution to occur." *Id.* Such adjustments may be warranted when a distributive award is not self-effectuating and "implementation of the award has been frustrated by a party's act or failure to act." *Id.*

[¶ 27] Here, the original divorce judgment evidences the divorce court's intent to equitably divide the parties' marital debt by making Skehan solely responsible for payment of the second mortgage on the property, with the principal balance to be reduced by proceeds derived from the sale of certain of the parties' personal property, including the motorcycle. *See Corcoran*, 2011 ME 14, ¶ 16, 12 A.3d 71; *Weiss v. Brown*, 1997 ME 57, ¶ 6, 691 A.2d 1208. Accordingly, the court's order modifying the divorce judgment was not an attempt to impermissibly modify the distribution of property, in the form here of marital debt, as established in the divorce judgment. Rather, it was intended to effect a permissible adjustment to the mechanism neces-

sary for the division of the marital debt to occur. *See Black*, 2004 ME 21, ¶ 12, 842 A.2d 1280.

[¶ 28] In this case, the implementation of the distribution of marital debt was frustrated by "a party's act," *id.*, when Lewin refinanced the property. Although Lewin's unilateral and unannounced action in refinancing the property caused the intended distribution of debt in the divorce judgment to be complicated, her action does not absolve Skehan of his responsibility for paying an amount equivalent to the principal indebtedness on the now-extinguished second mortgage. *See generally Torrey v. Torrey*, 415 A.2d 1092, 1093–94 (Me.1980) (concluding that refinancing mortgage addressed in divorce judgment may not relieve payment obligation of party ordered to make payments on mortgage). Accordingly, the court must modify the divorce judgment by adjusting the mechanism by which the debt distribution ordered in the divorce judgment is to occur.

[¶ 29] Here, we cannot determine from the court's post-judgment order how the court attempted to replicate Skehan's original marital debt payment obligation. Although the court found that the unpaid principal balance of Skehan's payment obligation is $16,000, the court did not deduct from that principal balance the $4800 from sale of the motorcycle, as required by the terms of the divorce judgment.

[¶ 30] Because we recognize that the court's finding of and sanction for contempt may have affected the remainder of its judgment, we also vacate the court's order modifying the marital debt payment mechanism in the divorce judgment and remand for further proceedings. On re-

mand, the court is to recalculate the amount that Skehan must pay to Lewin in order to fulfill his obligation to pay the principal that was due on the second mortgage, by reducing the principal balance on which calculations are based to $11,200, and applying to that amount the interest rate obtained by Lewin in her refinancing of the property.[6] The court may also consider allowing Skehan the option of meeting his responsibility for the debt by making monthly payments to Lewin for a period certain, or, should Skehan choose, by paying the amount due in accelerated payments. The trial court may also consider how both parties' actions caused unnecessary, additional litigation when addressing the appropriateness of awarding attorney fees to either party.

The entry is:

Judgment vacated and remanded for further proceedings consistent with this opinion. No costs to either party on appeal.

---

6. On remand, the court should further reduce the principal balance on which calculations are based by the amount of any payments that

Skehan has made toward the principal since the court's order dated November 9, 2010.