MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2019 ME 48
Docket:        Kno-18-240
Argued:        December 11, 2018
Decided:       April 4, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

EDWARD J. HARSHMAN

v.

SHEILA C. HARSHMAN

SAUFLEY, C.J.

[¶1]  Edward J. Harshman appeals from post-judgment orders entered in the District Court (Rockland) finding him in contempt.  Harshman, the beneficiary of a substantial trust, had been ordered to maintain $500,000 in life insurance to benefit his ex-wife and their children, to whom he was required to pay significant spousal and child support.  Not only did he fail to obtain the $500,000 policy, he allowed a $300,000 policy to lapse, claiming that when the court told him it was not enough, he was no longer required to maintain that policy; a claim that defies logic.  We affirm the judgment of contempt.  We remand to the District Court for enforcement of the contempt order, and for the sanction of imprisonment imposed therein to be served immediately.

2

[¶2]  The District Court entered two orders of contempt and repeatedly provided Harshman with more time to comply.  Those orders, dated December 7, 2017 (*Mathews, J.*), and May 15, 2018 (*Raimondi, J.*), found him in contempt of the parties' divorce judgment after he failed to obtain a $500,000 life insurance policy that would name his former wife, Sheila Harshman, as the owner and beneficiary, and acted in bad faith in allowing his existing $300,000 term life insurance policy, which he owned but that listed Sheila as the beneficiary, to lapse.  *See* M.R. Civ. P. 66(d).  Edward challenges the court's findings of facts that he had the ability to comply with the divorce judgment and that his cancellation of his existing policy was in bad faith.

[¶3]  Edward and Sheila were married in 2000 and divorced in September 2016 through a judgment (*Sparaco, J.*) ordering, in pertinent part, as follows:

> [Edward] shall furnish a life insurance policy naming [Sheila] as beneficiary, and owned by [Sheila], in an amount no less than $500,000.
>
> . . . [T]he Court finds it prudent to have [Sheila] be the owner of this life insurance policy, but require [Edward] to pay any and all premiums associated therewith and to cooperate to the extent necessary to obtain physicals or other requirements.[1]

---

[1]  Edward appealed the court's judgment arguing that at trial the court impermissibly excluded evidence pertaining to his family trust financial documents and miscalculated the parties' respective

[¶4]  Almost a year after Harshman was ordered to obtain the $500,000 life insurance policy, in August 2017, Sheila filed a motion for contempt asserting that Edward had failed to obtain the policy.  *See* M.R. Civ. P. 66(d)(2)(A).  Edward did not assert a financial inability to pay for the ordered policy, but alleged that although he had obtained a life insurance policy of $300,000, "considering his age and health" he was uninsurable for a policy above that amount.  He provided no evidence that he made any actual efforts to obtain a policy or that any insurers declined any actual applications for policies.  The court (*Mathews, J.*) held a contempt hearing and found that, although Edward had the ability to comply with the divorce judgment, he "refused to do so."  The court also found that Edward's existing policy of $300,000 was not compliant with the divorce judgment because it was $200,000 less the amount required by the divorce judgment and it was not owned by Sheila.  Accordingly, the court adjudged that Edward was in contempt of the divorce judgment.  M.R. Civ. P. 66(d)(2)(D).  The court imposed a sanction of a thirty-day term of imprisonment, but the court stayed the sanction indefinitely to allow Edward

---

incomes for child support and spousal support purposes.  *See Harshman v. Harshman*, 2017 ME 60, ¶¶ 1, 15-18, 158 A.3d 506.  We affirmed the court's judgment.  *Id.* ¶ 1.

4

the opportunity to comply with the divorce judgment. *See* M.R. Civ. P. 66(d)(3)(A) (Remedial Sanctions; Coercive Imprisonment).

[¶5] In March 2018, Sheila filed a motion for the court to hold a hearing where Edward would be required to show cause for not complying with the divorce judgment. She included an affidavit averring that he had "affirmatively cancel[led] the existing (but insufficient) life insurance policy" of $300,000. The court (*Raimondi, J.*) held the show cause hearing that Sheila had requested and found that Edward had inquired into only whether "he could get a *whole life* insurance policy and only for the full amount of $500,000." (Emphasis added.) As it pertains to his $300,000 term plan, Edward "never inquired whether ownership of the $300,000 [term life] policy could be transferred to [Sheila]." Nor did he make "inquiries as to whether he could get an additional policy for $200,000 or perhaps two $100,000 policies so that he could comply with the order." Ultimately, the court found, "the deliberate end result of his actions was to leave [Sheila] with no insurance coverage at all."

[¶6] Once again, however, the court stayed the imposition of the contempt sentence. The court allowed Edward thirty days to comply with the divorce judgment, potentially by reinstating the $300,000 policy, with or without Sheila as the owner, and obtaining other, smaller policies that would

provide a total of $500,000 in coverage. The court also required Edward to investigate any other avenue to secure his spousal support obligation, "including family trust funds," "in the event that it proves difficult to obtain insurance." The court set the matter "for review on June 12, 2018, . . . at which time [Edward] must have obtained insurance coverage as ordered or have persuasive proof of his good faith efforts to do so or the sentence of the court will be imposed at that time."

[¶7] At the June review hearing, the court found that Edward had "failed to comply with [the May 15, 2018,] order." The court imposed a sanction and ordered Edward to serve a term of thirty days in the Knox County Jail and denied Edward's motion to stay the imposition of the sanction. *See* M.R. Civ. P. 62(a), 121. Nonetheless, it is apparent that Edward has not served the sentence,[2] and he now appeals to us, arguing that the court erred in its factual

---

[2] Following Edward's motion to stay the imposition of the sanction, the court appropriately denied the stay and responded as follows:

> No, I'm not going to stay it. You can appeal it. If you want to file a notice of appeal, you can do that. . . . And *I think then the appeal will stay*, but at this point in time, [Edward] has had continuances and extensions and excuses, and I'm not giving any more extensions so I'm not giving any more stays. . . . He wants to appeal it, it'll be *automatically stayed*.

(Emphases added.) To the extent that there was any confusion about whether Edward's sentence was stayed pending an appeal, when neither the trial court nor the appellate court explicitly granted a stay, it was not. *See* M.R. Civ. P. 62(a), 121; M.R. App. P. 10(a)(4). Maine Rule of Civil Procedure 62(a) "excepts certain trial court orders, specifically including those involving spousal support, from the usual appellate stay. In its discretion, a trial court could choose to stay any order, including its

6

finding of his ability to comply with the life insurance provision of the divorce judgment and that, because the court earlier found his term policy inadequate to satisfy the divorce judgment, the court erred in determining that he acted in bad faith in cancelling the policy. *See* M.R. App. P. 2B(c)(1).[3]

[¶8] We review the court's factual findings that support a decision "regarding civil contempt for clear error." *Lewin v. Skehan*, 2012 ME 31, ¶ 18, 39 A.3d 58. Absent clear error in the court's underlying factual findings of contempt, we review the court's judgment for an abuse of discretion. *Id.*; *Ames v. Ames*, 2003 ME 60, ¶ 22, 822 A.2d 1201.

---

entire judgment, pending appeal, pursuant to subsections (a) and (d). But if it has not stayed the portions of its judgment subject to M.R. Civ. P. 62(a), those provisions take effect and remain in effect throughout the appeal period." *Laqualia v. Laqualia*, 2011 ME 114, ¶¶ 27, 29, 30 A.3d 838 (citations omitted) (holding that when a divorce order requires a spouse to furnish health insurance to their former spouse, it is considered spousal support); *see also* M.R. Civ. P. 121. An order finding a party in contempt of an order imposing spousal or child support is "an order relating to the care, custody, and support of minor children or to the separate support . . . of a person . . . ." M.R. Civ. P. 62(a). Here, the court specifically denied Edward's motion to stay. It was Edward and his counsel's responsibility to ensure Edward's compliance with the Rules of Civil Procedure and the court's order.

3 Sheila argues that the contempt order dated December 7, 2017, became final on December 28, 2017, pursuant to M.R. App. P. 2B(c)(1) and therefore Edward's June 12, 2018, appeal was not timely filed. *See* M.R. App. P. 2B(c)(1) (requiring that a notice of appeal be filed within "21 days after entry into the docket of the judgment"). To the contrary, however, the original contempt order stayed the imposition of the sanction indefinitely, creating "the possibility that the need for review may [have been] . . . mooted by future developments in the trial court," and therefore the order was not a final judgment. *Murdock v. Thorne*, 2016 ME 41, ¶ 6, 135 A.3d 96 (alterations omitted) (quotation marks omitted) (dismissing the party's appeal because "a central dispute of fact . . . remain[ed] unresolved in the trial court . . . [and] the entire case would go away if he failed to prove [certain facts]" (quotation marks omitted)).

[¶9]  As we have previously stated:

> For a court to find contempt, the alleged contemnor must be presently able to comply with the court's order.  When it is impossible for a party to comply, the party is not in contempt.  It is presumed that an alleged contemnor is presently able to comply when the order itself implies that he was able to comply at the time the order was issued; therefore, the moving party makes a prima facie case of contempt when the moving party establishes that the alleged contemnor has not complied with a valid court order.  Once the failure to comply has been established, the alleged contemnor has the burden of production, of going forward with evidence of his inability to comply.  The burden of persuasion, however, remains with the moving party.

*Ames*, 2003 ME 60, ¶ 22, 822 A.2d 1201 (quotation marks omitted) (alternations omitted) (citing *Wrenn v. Lewis*, 2003 ME 29, ¶ 26, 818 A.2d 1005; *Zink v. Zink*, 687 A.2d 229, 232-33 (Me. 1996)).  "For a person to be held in contempt for violating a court order, that court order must inform the person in definite terms what duties the order imposes upon him." *Lewin*, 2012 ME 31, ¶ 19, 39 A.3d 58.

[¶10]  Here, Edward's financial capacity to comply with the court's orders has never been in question.  Nor does Edward claim to be impecunious.[4]  At the

---

[4]  In the parties' divorce order, the court found, in pertinent part, as follows:

> [Edward], generally, was not credible on financial issues, including his earning potential.  More likely than not, [Edward] has not attempted to maximize his earnings as a doctor because he has not needed to given the substantial income that he receives from family trusts.

8

contempt hearing and through her motion and affidavit filed before the show cause hearing was held, Sheila provided evidence that Edward did not obtain the requisite policy, thereby making a prima facie case of contempt. It was then Edward's burden to produce evidence of his inability to comply with the judgment.

[¶11] At the contempt hearing, Edward testified that he had not filled out a single application for life insurance in the fourteen months since the divorce

---

Specifically, [Edward] has access to, and has historically had access to, substantial tax-free trust distributions from non-marital revocable and irrevocable family trust funds. For example, in 2014 and 2[01]5, [Edward] received well in excess of $100,000 from the trusts.

. . . .

The evidence shows that even though [Edward] does not have an absolute right to demand a distribution, he has always received distributions when requested and has relied upon these funds throughout the marriage.

. . . .

Moreover, the evidence suggests that [Edward] has been deliberately attempting to keep his income low and his expenses high during the pendency of the divorce. The [c]ourt finds that [Edward] engaged in a concerted effort to manipulate and/or mislead [Sheila] as to the resources and income available to him. For example, correspondence between [Edward] and his sister, the trustee for many of his family trusts, demonstrated that [Edward] and his sister deliberately, and artificially, during the divorce action, "adjusted" [Edward]'s income stream in an effort to reduce [Edward]'s exposure to "claims of alimony" from [Sheila]. In such correspondence, [Edward] expressly states that he will have the ability to "pay Sheila more than he is legally required," and engages in a dialogue with his sister about not paying his credit card debts until after the divorce in order to avoid an appearance of sizeable income.

. . . .

. . . To that end, the [c]ourt finds that [Edward] was voluntarily under-employed throughout the parties' marriage and remains voluntarily underemployed.

judgment. Edward's only evidence at trial that he was uninsurable was his testimony that he spoke with an insurance agent who told him that he would not be able to be insured due to his numerous health disorders. Edward claimed that he could not remember the agent's last name, and he did not produce any written denials from the agent's company. Edward's stubborn refusal to comply with the order, including his inaction in applying for any policies, fully supports the court's factual findings.

[¶12] The divorce judgment did not require that Edward obtain a *single* policy in the amount of $500,000 or that he acquire a *whole* life insurance policy. Rather, as Edward acknowledged, he could have complied with the judgment by obtaining a *term* life insurance policy or by obtaining smaller policies that aggregated to $500,000 in coverage. Edward nevertheless testified that these distinctions were meaningless because, as he self-determined, he was not insurable for any type or amount of life insurance above $25,000. The court acted well within its authority in declining to credit Edward's uncorroborated statements about his uninsurability, and the record falls well short of demonstrating that the court erred or abused its discretion in finding that Edward had the ability to comply with the divorce judgment.

[¶13] Edward also argues that, at the show cause hearing, the court erred in taking into consideration his decision to allow the $300,000 term life insurance policy to lapse because following the contempt hearing, the court held that the term policy was not compliant with the divorce judgment both because of its amount and because he owned it, not Sheila. Edward did not inquire, however, into whether he could transfer ownership of the policy, nor did he try to obtain additional, smaller policies to add to the existing policy to satisfy the requirement of $500,000 in coverage. The clear import of the language in the divorce judgment was to protect Sheila if he were to die before his support obligation terminates, and, as Edward acknowledged, the $300,000 policy would have, at least in part, financially protected Sheila. In light of Edward's now-professed uninsurability, his action in cancelling the *existing* term policy was unequivocally pertinent to the court's inquiry into whether Edward acted in good faith in his effort to comply with the divorce judgment. *See Ireland v. Tardiff*, 2014 ME 153, ¶ 9, 107 A.3d 618 (affirming a court's finding of contempt where the contemnor "failed to make a good faith effort to comply with the court's order").

[¶14] Edward has had nearly two years to comply with the unambiguous terms of the divorce judgment—from the day of the divorce judgment in

September 2016 through to the day of the contempt review hearing in July 2018.[5] The mandate in the divorce judgment is clear. Edward has substantial assets. Edward failed to present any persuasive evidence of his inability to comply with the insurance provision of the divorce judgment. Edward has ignored his court ordered obligations for more than two years.[6] Edward's apparent goal of denying his former wife the court-ordered financial security of the insurance policies has been successful for far too long.

The entry is:

> Judgment affirmed. Remanded to the District Court for immediate enforcement of the contempt order, with the sanction of imprisonment to be served immediately. Mandate to issue forthwith.

---

[5] Edward's remaining arguments are unavailing, and we do not address them further.

[6] The sanction imposed, which was for the limited period of thirty days but which could well have been an open-ended sentence, should be imposed without delay. A continuing failure to comply with a court order, when the contemnor has the capacity to comply can be punished by incarceration without an end date, so long as the contemnor is given the keys to his own freedom with the opportunity to purge himself of contempt while incarcerated. M.R. Civ. P. 66(d)(2)(D), (3)(A) ("Coercive Imprisonment. A person adjudged to be in contempt may be committed to the county jail until such person performs the affirmative act required by the court's order."); *Slauenwhite v. Slauenwhite*, 679 A.2d 93, 94 (Me. 1996) (holding that where a contemnor is given the keys to his own freedom with the opportunity to purge himself of contempt, coercive imprisonment could be for an indefinite period of time); *see also Desjardins v. Desjardins*, 2005 ME 77, ¶ 8 n.1, 876 A.2d 26.

12

Andrews Bruce Campbell, Esq. (orally), Andrews Bruce Campbell, P.A., Bowdoinham, for appellant Edward J. Harshman

Sarah Irving Gilbert, Esq. (orally), Camden Law LLP, Camden, for appellee Sheila C. Harshman

Rockland District Court docket number FM-2015-113
FOR CLERK REFERENCE ONLY