MAINE SUPREME JUDICIAL COURT                               Reporter of Decisions
Decision:        2025 ME 28
Docket:          Oxf-24-286
Submitted
 On Briefs:      January 7, 2025
Decided:         March 18, 2025

Panel:           STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

YOLANDA M. CURRIER

v.

JAMES M. CURRIER

LAWRENCE, J.

[¶1]  Yolanda M. Currier appeals from a judgment entered by the District Court (South Paris, *Malia, J.*) finding her former spouse, James M. Currier, in contempt of a divorce judgment in certain respects and not in contempt in other respects.  Because we conclude that the court erred in (1) finding that Yolanda had not met her burden to show contempt regarding the division of stock in James's employee stock plan and (2) valuing Yolanda's portion of James's 401(k) account, we vacate the court's judgment.

## I.  BACKGROUND

[¶2]  The parties, Yolanda[1] and James, were married on May 26, 2000.  On

---

[1]  Because the parties share the same surname, we refer to them by their first names.

2

September 5, 2017, Yolanda filed a complaint for divorce. After multiple mediation sessions, hearings, and settlement conferences, the court (*Ham-Thompson, J.*) held a final hearing on May 24, 2019, which Yolanda attended. James did not appear despite receiving proper notice of the hearing, and he did not contact the court to explain his absence.

[¶3] On July 2, 2019, the court entered a judgment of divorce. The court awarded sole parental rights and responsibilities to Yolanda as to the parties' three children and made other determinations regarding, inter alia, child support obligations, marital property division, and spousal support.[2] As part of the marital property division, the court awarded Yolanda one-half the value of James's employee stock plan holdings through May 24, 2019, exclusive of any reduction in value due to sales of stock that took place during the pendency of the divorce, and one-half the value of the marital portion of James's retirement benefits, including his 401(k) account, exclusive of any reduction of value due to loans taken out during the pendency of the divorce.[3]

---

[2] Neither party filed a motion to amend or modify the divorce judgment.

[3] In the divorce judgment, the court concluded that James committed economic misconduct, finding that during the pendency of the divorce James (i) cashed in stocks that he received from his employer's employee stock purchase plan and (ii) took out loans against his 401(k) account, in violation of the preliminary injunction. *See* 19-A M.R.S. § 903 (2017). Section 903 has been amended since the commencement of the parties' divorce action; the amendments are not relevant to this case. *See* P.L. 2021, ch. 647, § B-45 (effective Jan. 1, 2023) (codified as subsequently amended at 19-A M.R.S. § 903 (2024)); P.L. 2023, ch. 204, § 2 (effective Oct. 25, 2023) (codified at 19-A (M.R.S. § 903 (2024)).

[¶4]  Between August 2019 and August 2023, Yolanda filed five motions for contempt against James, four of which were granted.[4]  The fifth motion for contempt, which is at issue in this appeal, was filed on August 10, 2023. Relevant to this appeal, Yolanda asserted that James should be found in contempt for (1) failing to provide an accounting of his stocks or make any payments toward the stock division awarded to Yolanda as required by a previous contempt order and the divorce judgment and (2) failing to file a proposed qualified domestic relations order (QDRO) as required by a previous contempt order and the divorce judgment to effectuate the division of James's 401(k) account.

[¶5]  The court (*Malia, J.*) held a hearing on the fifth motion for contempt on March 15, 2024.  At this hearing, Yolanda and James both testified, and the court admitted one exhibit in evidence.

[¶6]  After the hearing, the court determined that Yolanda "did not prove by clear and convincing evidence that James owns any stocks or previously owned any stocks" and therefore concluded that James was not in contempt regarding the stock division obligations pursuant to the divorce judgment.  In addition, the court determined that, at the time of the parties' divorce, there

---

4    Neither party filed a motion for further findings over the course of the post-judgment proceedings in this case.

4

was approximately $7,000 in James's 401(k) account,[5] of which Yolanda is entitled to half. The court found James to be in contempt of the 401(k) account obligation and ordered half of its value ($3,500) to be paid to Yolanda.

[¶7] Yolanda timely appealed and challenges (1) the court's conclusion and findings regarding the stock division and (2) the court's findings regarding the value of James's 401(k) account. *See* M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶8] We "review the factual findings that form the basis for the trial court's decision regarding motions for contempt for clear error." *In re Children of Richard E.*, 2020 ME 31, ¶ 34, 227 A.3d 159. The party seeking a contempt order has the burden of proving "by clear and convincing evidence that the alleged contemnor failed or refused to comply with a court order and presently has the ability to comply with that order." *Beckerman v. Pooler*, 2015 ME 80, ¶ 7, 119 A.3d 74 (quotation marks omitted). We "presume[] that the alleged contemnor has the present ability to comply with a court order if the order

---

[5] The court concluded that James did not have to comply with the requirement to file a proposed QDRO because it found that there was no longer a 401(k) account. James testified that there was no longer an account because, when he had left his job, he received a 401(k) account distribution and used it to cover his relocation expenses to pursue a new job opportunity.

implies that he was able to comply at the time the order was issued." *Lewin v. Skehan*, 2012 ME 31, ¶ 19 n.5, 39 A.3d 58.

[¶9]  "Once the moving party shows that the alleged contemnor has not complied with a valid court order, the alleged contemnor bears the burden of producing evidence of his inability to comply" or that he complied to the fullest extent possible.  *Id.*; *see Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 13, 982 A.2d 339.  "The burden of persuasion remains at all times, however, upon the party moving for a finding of contempt."  *Skehan*, 2012 ME 31, ¶ 19 n.5, 39 A.3d 58.  The party seeking a contempt order "can prevail on a sufficiency of the evidence challenge to a finding that her burden has not been met only if she demonstrates that a contrary finding is compelled by the evidence."  *Efstathiou*, 2009 ME 107, ¶ 10, 982 A.2d 339 (quotation marks omitted).

[¶10]  Based on the record before us, we conclude that the court clearly erred in its findings regarding the accounting for and the division of James's employee stock holdings and the value of the 401(k) account.  First, Yolanda met her burden to show that James had not complied at all, let alone to the fullest extent possible, with the accounting for and division of his stock holdings as required by the divorce judgment.  Second, the evidence does not support

the court's finding that the value of James's 401(k) account used to determine Yolanda's share was $7,000 at the time of the divorce.

## A.    Stocks

[¶11]    Yolanda argues that the court erred by failing to find James in contempt based on his failure to present any accounting of his stock account. The court based its conclusion on its determination that Yolanda failed to "prove by clear and convincing evidence that James owns any stocks or previously owned any stocks."  Because the evidence compels a finding that Yolanda met her burden by demonstrating that James did not do anything to comply with what the divorce judgment and fourth contempt order required of him, we conclude that the court erred.

[¶12]    As the party moving for contempt, Yolanda first had the burden to show that James had not complied with a court order—a burden that she clearly met.  The divorce court found that James cashed in stocks during the divorce proceedings.  The court deemed this to be evidence of economic misconduct because it violated the preliminary injunction issued pursuant to 19-A M.R.S. § 903 (2017).  Consequently, in its divorce judgment, the court awarded Yolanda one-half the value of James's stocks through May 24, 2019, corrected to account for the stocks that were sold during the pendency of the

divorce by calculating the value as if James had not cashed in those stocks. James was ordered to provide Yolanda "with a complete accounting of his . . . employee stock plan from September 1, 2017, through May 24, 2019" in order to effectuate the division.

[¶13] At the contempt hearing, Yolanda showed that James had not complied with court orders by testifying that James had not provided her with any documentation regarding the value of his stocks despite being ordered to do so in the divorce judgment and the fourth contempt order. James did not contest that he failed to provide Yolanda with an accounting of his stock plan, nor did he contest that he failed to pay Yolanda any portion of the stock value as ordered in the divorce judgment. Instead, James simply testified that he did not have any stocks at the time of the fifth contempt hearing or at the time of the fourth contempt order. He also vaguely suggested that he did not have stocks at the time of the divorce judgment. He offered no explanation, nor did he put forth any evidence, as to why he could not provide an accounting of his stock plan.

[¶14] Thus, Yolanda met her burden. She not only demonstrated James's noncompliance by showing that James did not provide an accounting of his stock plan and had not divided that stock as ordered by the divorce judgment

8

and the fourth contempt order; given James's long-running pattern of ignoring court orders[6] and his failure to offer any reasonable explanation or evidence as to his repeated failures to comply, she also demonstrated that James did not comply with these orders to the fullest extent possible. Therefore, the court clearly erred by finding that Yolanda did not meet her burden.

[¶15] Moreover, the divorce judgment reflected that the divorce court had already found that James had stocks—and had cashed them in—*between the inception of the divorce action and the date of the divorce judgment*. This is why the divorce court ordered that the period subject to the accounting begin in September 2017—the start of the parties' divorce proceedings—and end on the date that the divorce hearing took place. Therefore, Yolanda did not have to prove in the fifth contempt hearing that James had owned stocks, because that finding was expressly made in the divorce judgment. James's testimony that he no longer owns stocks[7] is irrelevant to James's ability to provide an

---

[6] Over the course of two years, the court found James in contempt of the divorce judgment multiple times, for reasons including failing to provide a copy of his tax return; failing to complete and file a proposed QDRO; failing to divide his stocks; failing to divide his 401(k) account; failing to provide the parties' children with health insurance coverage; failing to pay his portion of the children's uninsured medical expenses; and failing to pay sanctions previously ordered.

[7] Because James never filed a motion for further findings regarding the divorce judgment, we accept the divorce court's finding that James owned stocks prior to the divorce that he then sold. *See Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 7, 982 A.2d 339 ("A final judgment in a divorce proceeding may preclude the relitigation of an issue decided in that proceeding.").

accounting of stocks that he had previously owned. Accordingly, it was clear error for the court to find that James did not own and had not previously owned any stocks. Because the court relied on these errors to find that James was not in contempt, we vacate the judgment as to these findings.

**B.     401(k) Account**

[¶16]  Yolanda contends that the court should not have accepted $7,000 as the value of the 401(k) account to be evenly divided based solely on James's testimony without any corroborating documentation. Because the court calculated the value of the 401(k) account in contravention of the divorce judgment's provisions, we conclude that the court clearly erred.

[¶17]  The divorce court found that James committed economic misconduct by "taking out loans against his 401(k)" account after Yolanda filed for divorce.[8]  Because of this misconduct, the divorce court ordered that any loans "incurred since the date of service of the Complaint for Divorce (September 21, 2017)" may not affect the value of the 401(k) account for purposes of calculating Yolanda's fifty percent distribution.

---

[8]  At the contempt hearing, James testified that he stopped making contributions to his 401(k) account after the divorce proceedings started. We note that stopping such contributions also runs afoul of the preliminary injunction entered pursuant to 19-A M.R.S. § 903.

[¶18]   In the fifth contempt hearing, James testified that, following the divorce, he left the company that offered his 401(k) plan benefit and received a distribution of $7,000 upon his departure.   He specifically noted that $7,000 was what was left in the account *after* any loans against the account were paid off by subtracting the unpaid balance on those loans from the remaining funds in the 401(k) account.

[¶19]   The court clearly erred because it found the value of the 401(k) account by accepting evidence of the *net* value of the account—$7,000—which, per James's testimony, actually excluded the account funds used to pay off the outstanding balance of the loans prior to the distribution to him.   The divorce court had already found that James had taken out loans against his 401(k) account and that such loans must be accounted for in determining the 401(k) account's value.   The only testimony regarding the $7,000 figure was that it was the amount remaining *after* loans were taken out and paid off.   Thus, without question this figure cannot be used to determine the amount owed to Yolanda pursuant to the divorce judgment.   In other words, the only finding that can be made given the competent record evidence regarding the $7,000 value is that the value of the 401(k) account was *greater* than $7,000 after adjusting for the amount of 401(k) account funds used to pay off the outstanding loans against

the account. We thus conclude that the court clearly erred in valuing Yolanda's interest in the 401(k) account at $3,500 and therefore vacate the judgment as to this finding.

[¶20] For the foregoing reasons, we vacate the court's judgment as to the value of Yolanda's interest in James's 401(k) account and the contempt determination regarding the stock accounting and payment. Moreover, we note that James has manifested an unrelentingly flagrant disrespect for the court's orders since the final hearing in this divorce action[9] as further evidenced by four separate findings of contempt since the entry of the divorce judgment. We remand this matter for a new hearing consistent with this opinion, mindful that the court may in its discretion consider imposing punitive sanctions should it find that James persists in his pattern of contumacious conduct with respect to the court's orders.

The entry is:

> Judgment vacated. Remanded for proceedings
> consistent with this opinion.

---

[9] As noted above, James did not appear for the final hearing despite receiving proper notice of it and he never contacted the court to explain his absence.

12

Yolanda M. Currier, appellant pro se

James M. Currier did not file a brief

South Paris District Court docket number FM-2017-130
FOR CLERK REFERENCE ONLY